1. The evidence was amply sufficient to prove the corpus delicti.
2. In order to authorize a conviction of murder, a confession must be corroborated by other evidence. This requirement is fully met, so as to authorize a conviction, when the corpus delicti is proved by evidence other than the confession. Daniel v. State, 63 Ga. 339; Paul v. State, 65 Ga. 152; Westbrook v. State, 91 Ga. 11 (2) (16 S.E. 100); Owen v. State, 119 Ga. 304 (2) (46 S.E. 433); McVeigh
v. State, 205 Ga. 326 (53 S.E.2d 462). The evidence warranted the verdict, and the trial judge did not err in overruling the general grounds of the motion for new trial.
3. It is within the discretion of the court as to whether he will allow a preliminary examination as to the admissibility of a confession to be made in the presence of the jury. Where the trial judge allows such proof to be made in the presence of the jury, and the evidence is sufficient to show that the confession was freely and voluntarily made, the course the trial judge adopted affords the defendant no cause for complaint. Stanford v. State, 201 Ga. 173 (3) (38 S.E.2d 823), and cit. *Page 529 
(a) "While it is the better practice to show by preliminary evidence that confessions intended to be proved were made freely and voluntarily, yet where such evidence is omitted until after the confessions are received, it may then be introduced." Smith v. State, 88 Ga. 627 (2) (15 S.E. 675).
4. "In the absence of a written request, it is not error requiring a reversal for the judge to fail to instruct the jury upon the law of confessions." Patterson v. State, 124 Ga. 408 (52 S.E. 534). Malone v. State, 77 Ga. 768
(5); Sellers v. State, 99 Ga. 212 (25 S.E. 178); Miles v. State, 182 Ga. 75 (2) (185 S.E. 286). "In the absence of a special request so to do, the court is not bound to charge the provisions of the Penal Code, § 1031 [§ 38-420], that `all admissions should be scanned with care, and confessions of guilt should be received with great caution.'" Cantrell v. State, 141 Ga. 98 (2) (80 S.E. 649); Mika
v. State, 196 Ga. 473 (5) (26 S.E.2d 616).
Judgment affirmed. All the Justicesconcur.
 No. 16697. JULY 11, 1949.
Nettie Elvine was indicted for the murder of Mrs. B. K. Smith, the indictment charging that the defendant killed the deceased by choking her with her hands. The jury trying the case returned a verdict of guilty with a recommendation of mercy. The defendant's motion for new trial, as amended, was overruled, and to this judgment the defendant excepted.
On the trial, the State's evidence, briefly, disclosed the following facts: At about 6 p. m. on August 14, 1948, the body of Mrs. B. K. Smith was found lying in her kitchen. There was evidence of a struggle having occurred in the kitchen. A screen door, opening from the kitchen, was damaged. One hinge and a brace on the door had been pulled loose, and the wire had apparently been pulled loose by a heavy pressure applied from inside the kitchen; and on the dust of the screen wire there was a print shaped like a body. Inside the room, a stick of wood was found lying between the sink and the stove, and on the wood there were gray hairs, similar to the hair of the deceased, a 70-year-old woman. Under the sink there was a smear of blood. The deceased was lying, face downward, between a chair and a stove. A cloth was wrapped around her hands, and a blood-stained dishcloth was underneath her mouth. There were bruises and scratches on her hands, and bruises all about her body. On her throat there were deep bruises, the size of fingerprints. *Page 530 
A doctor, who examined the deceased, testified: "I examined the remains of Mrs. B. K. Smith. I considered strangulation to be the cause of her death. She was strangled by choking. There were some marks on her throat. They indicated they had been caused by human hands. . . I made a thorough examination. When I was through examining her, I gave as my opinion that she was killed by strangulation. . . The woman was bruised all over the body. . . There was a bruise on her head. On the forehead. The bruise that I found on her head could have been caused by that lightwood splinter there. I don't believe that it contributed to her death. I found other bruises on her body. Both hands — posterior surface of both hands — was bloodshot. There was evidence of a struggle some way. I said that it could have been a criminal attack based on the bruises I found on the body. That is all, but it was not my opinion then and it is not my opinion now that she was criminally assaulted [referring to the fact that he did not think anyone had had carnal knowledge of the deceased]. I positively swear that she died as a result of being choked by human hands."
On the morning of August 14, 1948, at about 8:15, a daughter of the deceased left the deceased alone at the house. The daughter drove by the home of the defendant, who was living in a tenant house on Mrs. Smith's farm. The defendant was a servant in Mrs. Smith's home. The daughter requested the defendant to go to the home of the deceased to wash some clothing.
The time of death was fixed at approximately 11 a. m. When questioned, the defendant admitted that she had gone to the Smith residence and had washed some clothing there. She stated that she had left the Smith residence at about 11 a. m., and maintained that Mrs. Smith was alive at that time, peeling some apples. She gave the investigating officer a detailed statement as to her activities, the activities of Mrs. Smith, and the activities of the defendant's children on the morning of August 14. Further investigation revealed discrepancies in the defendant's statement, and on further questioning, she admitted that some of her statements had been untrue. The defendant and the members of her family were arrested. They were later released, and about ten days after the homicide the defendant was again arrested, questioned by the sheriff of the county, and then confessed the crime. *Page 531 
The sheriff testified: "Nettie made a statement to me at a later date, and at that time she admitted killing Mrs. Smith. I examined Nettie's fingers. I examined the prints on Mrs. Smith's throat. I examined both of her hands, the left and the right. I didn't find anything peculiar about it as I know of. On this side there was one mark and several on this side. She said she choked her with her left hand. . . If she had done it with her left hand the thumb print would have been on the left side, and the three fingers would have been on this side (indicating) — they would be if she was standing up like Nettie stated she was. Nettie stated she was standing up when she choked her. She just grabbed her in the throat and choked her and when she turned her loose she fell and her head hit this stove here — and on this side of her head was a bruised place. She said she held her there for a minute or two and turned her loose and she fell. She said that she fell in the position she was found in, on her face. Just fell forward on her face. There was not a bit of duress in the world in obtaining this statement. Any statement that she made to me was made freely and voluntarily, without any fear of punishment or hope of reward, or the remote fear of injury from anything. It was beyond my knowledge if she had any fear of being hurt."
The evidence revealed that the defendant made a similar confession on two other occasions, once in the presence of her husband, the sheriff, the solicitor-general, and a newspaper editor. The confession was corroborated in a number of particulars. The defendant stated that the homicide occurred shortly after the deceased had read to the defendant two items from a newspaper. A newspaper was found on a table in the kitchen, and beside it was a pair of glasses, used by the deceased when she read. The newspaper contained the two items mentioned by the defendant. The defendant stated that she choked the deceased with her left hand, and the bruises on the throat of the deceased indicated that she had been choked by someone's left hand.