## 22842. IVY v. THE STATE.

700

SUBMITTED FEBRUARY 8, 1965—DECIDED MARCH 3, 1965.

*Hancock, Wilbanks & Phillips,* for plaintiff in error.

*Reid Merritt, Solicitor General, Jack Holland, Solicitor General, Eugene Cook, Attorney General, J. R. Parham, Assistant Attorney General,* contra.

QUILLIAN, Justice. ■ The defendant insists upon the general ground of his motion for new trial that the verdict was without evidence to support it. The evidence is somewhat voluminous but, succinctly stated, the uncontradicted evidence adduced upon the trial was as follows: Mrs. Helen W. Wilson, a sister of the deceased, was a visitor in the home of the defendant in Norcross, Gwinnett County, having spent the night there, and the defendant, the deceased and Mrs. Wilson were the only people present in the house on the morning of August 10, 1964, when the homicide occurred. Mrs. Wilson left the defendant and the deceased alone in the kitchen of the house, engaged in discussion of a small debt the deceased contended the defendant owed her. Mrs. Wilson retired to a front bedroom of the house to press a dress she proposed to wear. This room was separated from the bedroom of the principal parties by the living room. About 10:30 a.m. she heard three shots, the exact location from whence the report came she was not at that time able to determine. Immediately after the shots were fired Mrs. Wilson was in the

act of fleeing from the house when the defendant, whom she did not then see, called out to her: "Helen, I've shot Jessie, now I'm going to shoot myself, go out to Mrs. Nalley's and call an ambulance." She was familiar with and recognized his voice. Mrs. Wilson, only partly dressed, proceeded to a near neighbor's house, whether she ran or walked she could not recall. There she reported the incident. The neighbor's son, Otis Nalley, telephoned the police. When the officer arrived at the Ivy house and went upon the porch, he heard two more shotgun blasts apparently coming from the back part of the house. Thereupon, he deferred entering the house until the arrival of another policeman, J. Kelley Everett. Upon entering the house, the officers found the body of the deceased in the bedroom occupied by her and the defendant. Her condition was, as described by the police officers, the sheriff and a doctor, that a part of her head was blown off and she was of course dead.

The doctor gave as his opinion that the death was caused by a shotgun or a gun of large bore. However, the sheriff testified that some of the shots had entered the deceased's shoulder. From his testimony it clearly appeared the gun used to slay the deceased was a shotgun. There was no weapon found in the room where the body lay. The doctor and the sheriff testified there were no powder burns on the face of the deceased. One police officer was of the opinion that the discoloration he saw about the fatal wound was a powder burn. Mrs. Wilson testified she never knew the deceased to own a gun; that the only two guns she saw in the house were a shotgun and a rifle, which were kept in the kitchen. The police officers, upon entering the house, found the defendant lying in the kitchen, bleeding profusely from a wound in his head, apparently a shotgun wound. A sixteen gauge shotgun was lying partly beneath him. He was apparently unconscious when they entered the room and did not open his eyes during the conversation with them, but according to their testimony recovered sufficiently to make certain remarks.

Officer Everett recalled that he stated: "I· shore played hell." Both Chief of Police Simpson and Everett related that the defendant said in substance "that woman made me so goddamn mad." Both officers testified he inquired of his wife's condition

and that he requested that Everett give him another shell. Several witnesses, including the sheriff who arrived shortly after the officers, testified the defendant requested to be carried to the Duluth Hospital. Otis Nalley testified the defendant made the further declaration: " 'She made me so goddam mad,' and that was first, and then he waited a minute or two, and then he wanted to know 'how bad did I hurt my little wife.' "

The officers and sheriff definitely identified the sixteen gauge shotgun as being in the defendant's possession immediately after the homicide occurred and in the room adjoining that in which the deceased was killed. It was the only shotgun found in the defendant's possession or in the house. The sheriff testified in identifying the gun: "Yes sir, that was the shotgun and it has been in my possession in the evidence room since . . . 16 gauge shotgun, yes sir. . . Well, I had, of course, the other policemen were there, asked if there was any evidence around, so far as the gun shells and all. And they had gathered up some empty gun hulls. I don't know just where they were picked up from. . . They were 16 gauge, they were five empty shells which I had there, that I brought back, that was given to me by some of the officers that were there on the scene and picked them up."

A neighbor, Mrs. Alice Nalley, who lived within close proximity to the Ivy home testified that over a period of six years she had heard the defendant Ivy make dire threats of violence upon his wife.

The defendant insists that the evidence was insufficient to warrant a conviction because it did not exclude every reasonable hypothesis other than the guilt of the accused. His counsel argues that someone could have entered the back of the house when all of the witnesses were at the front of the house, murdered the deceased, wounded the defendant and fled undetected. In support of this contention they correctly stated that witnesses who first arrived at the scene of the tragedy came from the front of the house and the witnesses could not swear some one did not come into the rear of the house previous to the commission of the homicide, and that when they found the defendant lying on the kitchen floor the back door to the house was open.

This theory presents only a sheer possibility unsupported by proof. The rule as to the sufficiency of circumstantial evidence is, as stated in *Harris v. State,* 86 Ga. App. 607 (1) (71 SE2d 861): "It is not necessary, even in criminal cases, to exclude every conjecture coming within the bounds of remote possibility, but only to exclude reasonable hypotheses and reasonable inferences." *Eason v. State,* 217 Ga. 831, 840 (125 SE2d 488); *Graves v. State,* 71 Ga. App. 96, 99 (30 SE2d 212).

There could hardly have been more positive proof of the defendant's guilt than that furnished by the circumstances we have outlined, coupled with his incriminatory statements and admissions. The facts above related were sufficient to support the verdict finding the defendant guilty of the offense of murder and to establish that the sixteen gauge shotgun found in the defendant's possession was the weapon with which he killed his wife.

■ Ground 4 of the amended motion for new trial alleges "the court erred in overruling movant's objection to a sixteen gauge shotgun being placed in evidence, in that such shotgun was never established as the weapon that killed the deceased." In Division 1 of this opinion we have pointed out evidence that was sufficient to identify this gun as the murder weapon. The ground is without merit.

■ Ground 5 of the amended motion for new trial alleges that, on objection by movant: "the court erred in failing to rule out remarks made by the solicitor . . . that defendant made statement[s] of committing the crime, in that [these] remarks prejudiced the movant's rights to a fair and impartial verdict where the jury was authorized to assume that movant made such statements." While neither the ground nor the record discloses what remarks the solicitor made, treating the ground as complete, it shows no error. The trial judge promptly responded to the defendant's motion with the statement: "the judge will so instruct the jury that there is no evidence in this case as to any confession. I'll undertake to charge the law properly as to any statements that may have been made."

After the judge made this statement, the defendant did not renew his motion or objection that the language used by the judge in responding to the objection did not eradicate the effect of the solicitor general's remark.

We are of the opinion that the action taken by the judge was adequate to eradicate any harmful effect of the alleged improper remark attributed to the solicitor general. For this reason and for the further reason that the defendant's counsel did not renew his objection or contend the statement of the judge did not suffice as a response to the objection, the judge did not err in taking no further action in the matter. *Johnson v. State,* 150 Ga. 67 (1) (102 SE 439); *Ehrlich v. Mills,* 203 Ga. 600 (4) (48 SE2d 107); *Kendrick v. Kendrick,* 218 Ga. 460 (4) (128 SE2d 496); *Purcell v. Hill,* 220 Ga. 663 (141 SE2d 152).

■ The sixth ground of the motion for new trial assigns as error the omission of the trial judge, without request, to charge the jury that the shotgun in question was not admitted as the weapon that killed the deceased. This contention is not meritorious for two reasons. First, "where evidence is admissible for one purpose, it is not error for the court to fail to instruct the jury to limit its consideration to the one purpose for which it is admissible, in the absence of a request to so instruct the jury." *Central of Ga. R. Co. v. Brown,* 138 Ga. 107 (2) (74 SE 839); *Thomas v. State,* 150 Ga. 269, 274 (103 SE 244); *Kimbrell v. State,* 57 Ga. App. 294, 296 (195 SE 460).

Furthermore, as appears from Divisions 1 and 2 of this opinion, there was sufficient evidence, in no way contradicted, to show the shotgun was used by the defendant to slay his wife.

■ The seventh ground of the amended motion contains two contentions as the basis upon which a new trial should be granted the defendant. The first is a recapitulation of the complaint that the judge, without request, did not instruct the jury that the defendant's utterances in regard to the homicide were incriminatory assertions and did not amount to either confessions or admissions of guilt on his part. We have disposed of this contention adequately and adversely to the defendant in the preceeding divisions. However, the rule is: "failure to charge the jury upon the subject of . . . confessions is not error in the absence of a timely written request." *Miles v. State,* 182 Ga. 75 (2) (185 SE 286); *Elvine v. State,* 205 Ga. 528 (4) (54 SE2d 626).

The final contention is "the court failed to charge the true con-

cept of law as to statements of defendant's *Code* § 38-415, of which defendant was entitled to have even without request and which materially affected the verdict." The ground is not complete in that it does not allege what "concept" or principle of the law relative to provisions of *Code* § 38-415 as amended (Ga. L. 1962, pp. 133, 134) should have been given in charge to the jury. *Cooper v. State,* 212 Ga. 367 (3) (92 SE2d 064); *Smith v. State,* 125 Ga. 300 (1) (54 SE 124); *Troup v. State,* 150 Ga. 633 (1) (104 SE 421); *Wright v. State,* 210 Ga. 212 (3) (78 SE2d 494).

The ground does not complain that the judge omitted to instruct the jury as to the right of the defendant to refrain from making a statement to the jury and that his election not to make a statement "shall create no presumption against him." However, if given such construction, the Court of Appeals held in *Bargeman v. State,* 17 Ga. App. 807 (1) (88 SE 591): "In a criminal case in which the defendant makes no statement at the trial, it is not error for the court to fail to instruct the jury that that fact should not be considered by them in determining as to the guilt or the innocence of the accused, where there is no request for such an instruction." *Mason v. State,* 19 Ga. App. 623 (91 SE 922); *Brooks v. State,* 63 Ga. App. 575, 581 (8) (11 SE2d 688); *McKenzie v. State,* 72 Ga. App. 208, 219 (6) (33 SE2d 539).

*Judgment affirmed. All the Justices concur.*