## 29264. THOMAS v. THE STATE.

HALL, Justice.

On June 28, 1973, B. J. James was killed, stabbed 16 times in the course of the robbery of his small store. Thomas was convicted of the armed robbery and murder, and brings this appeal.

The state's trial evidence showed that Thomas lived with two other young men; that around noon on June 28, 1973 before the killing which occurred in the afternoon, Thomas had asked one roommate whether Mr. James' store was open, and had been toying with a knife which he imbedded in one roommate's bedroom door; that Mr. James' body was discovered at approximately 3:00 p.m. surrounded by evidence of a scuffle, including a broken jar of pickled pigs' feet; that following the discovery of the crime the police questioned Thomas about his possession of a knife and he produced a knife for them; that for a period of time all three roommates were jailed in connection with the investigation and one consented to the search of their living quarters; that the search revealed a suitcase packed with Thomas' personal effects, and a pair of socks smelling of the juice of pickled pigs'

feet (the ownership of the socks was not established); that the search further disclosed that the knife Thomas had produced did not fit the mark on the bedroom door. Following this search, Detectives Weatherly and Wedlock interviewed Thomas at the jail, after advising him of his rights under Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974); he indicated he did not want an attorney, and voluntarily gave the following confession: "I walked into the store, saw the old man behind the counter and told him to, 'Give it up.' I was nervous and shaky because I needed a fix and was scared. He told me to take the money and when I turned from him and reached for the money he hit me in the forehead with something. I don't know what happened afterwards, other than hearing the old man groan — the old man mumble. I hadn't been up in two days and had no money or a job to get any. My head was so dizzy with pain until after I realized what I had done. I ran from the store. I threw the knife near I-16 and West Broad. He grabbed the mask and we fought. I threw the mask in a dumpster at West Broad and Gwinnett Street. There was approximately sixty-five dollars in bills. With thirty-five dollars I bought dope. With the other, I spent . . . liquor and food, et cetera." Police found the murder weapon at the place Thomas said he threw it, but were unable to find the mask. The defense relied upon a theory of temporary insanity brought on by drug addiction, excessive drinking, and the effects of a claimed blow on the head inflicted by the victim.

On this appeal, Thomas raises seven enumerations of error.

1. Enumerations 1 through 4 raise the general grounds but address no argument thereto. The record shows that the evidence supported the verdict, and these enumerations are without merit.

2. Enumeration 5 avers error in admitting into evidence the confession, contended to have been taken when officer Weatherly had advised Thomas that his father had retained an attorney for him, but had refused to allow Thomas to have the advice of counsel. Thomas' brief further argues that he had been deprived of food and water and subjected to constant questioning for 18 hours

before confessing; and that the police had suggested to him that a confession might produce a manslaughter charge.

Thomas' arguments on this point find little support in the record. At a voluntariness hearing held outside the presence of the jury both interrogating officers testified that Thomas was fully informed of his Miranda rights. Officer Weatherly testified that Thomas then stated that he wished no attorney and wanted to see only his father. Weatherly denied knowing at the time of taking his statement that any attorney had been actually retained for Thomas by his father. Though on cross examination Thomas' attorney pointed out a possible inconsistency between Weatherly's testimony and his written report in which he had stated that at some unidentified point he had advised Thomas that an attorney had been retained for him, this inconsistency disappeared on redirect examination when Weatherly testified that he first received definite information of the attorney's representation after taking Thomas' statement. The defense had no more questions for this witness, and his final clarified statement was not further attacked on cross examination and is not contradicted by anything in the record. Thomas testified that he was not advised of any of his rights and was told to copy down a statement. He testified that he felt that the statement could not have been a voluntary statement of his own because he did not remember giving such a statement. He said he was told by officers that if James had hit him during the robbery his own crime would be manslaughter whereas otherwise it would be murder; that he had been arrested the preceding evening, had been placed in a cell by himself, and had been given no food or water. Both interrogating officers denied that there had been any discussion concerning the difference between murder and manslaughter. Other pertinent circumstances shown by the record are that Thomas had the equivalent of a high school diploma and had one year of college; his father with whom he lived until shortly before the crime taught at a local college; Thomas had been arrested between 4:30 p.m. and 6:00 p.m. on July 5; the interrogating officers met with Thomas beginning at about 10:00 a.m. the next

morning; the form Thomas signed acknowledging that he had been told of his rights was dated 10:30 a.m.; the confession was taken at 10:50 a.m. There is absolutely no support in the record for the assertions made by Thomas' attorney in his brief, that Thomas was continually interrogated for 18 hours before confessing. In fact, the record shows these assertions of counsel to be untrue. Moreover, Thomas at no time testified that he was unaware of his right to counsel; he at no time testified that he expressed a desire for an attorney.

The trial court's determination that this confession was voluntary and therefore admissible for the jury's consideration was supported by a preponderance of the evidence as required by *High v. State,* 233 Ga. 153, and was not error. The requirements of Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908, 1 ALR3d 1205) were met.

3. Enumeration 6 claims that Thomas was denied his constitutional right of speedy trial because he was held in jail more than 18 hours without being afforded a preliminary hearing or arraignment. A police officer testified that Thomas was not given a preliminary hearing on the morning of July 6th, even though preliminary hearings for other persons were then in session, because that was prior to interrogation and Thomas had not been charged with the crime. In support of his argument, which runs to the admissibility of a confession given after 18 hours of imprisonment without preliminary hearing, Thomas cites McNabb v. United States, 318 U. S. 332 (63 SC 608, 87 LE 819) and Mallory v. United States, 354 U. S. 449 (77 SC 1356, 1 LE2d 1479), both of which are concerned with federal criminal practice, both of which are grounded in the Supreme Court's supervisory power over the lower federal courts and not in any principle of constitutional law; and neither of which is applicable here. Nothing in the record suggests that Thomas requested and was denied a preliminary hearing. Code Ann. § 27-210 speaks of offering a preliminary or "commitment hearing" within 72 hours. On these facts, under neither the majority nor the two dissenting opinions in *Phillips v. Stynchcombe,* 231 Ga. 430 (202 SE2d 26), is Thomas entitled to a

reversal for failure to be given a preliminary hearing within 18 hours of arrest.

4. Enumeration 7 claims error in the trial court's failure "to charge the jury on voluntariness or involuntariness of appellant's alleged confession."

As a preliminary matter, we note that although Thomas' statement did not specifically admit each and every element of the crimes charged, it was nonetheless a statement in which he assumed responsibility for the robbery of and attack upon the storekeeper, which attack was shown by other evidence to have consisted of 16 stab wounds. It was clearly a confession under the reasoning of our recent opinion in *Robinson v. State,* 232 Ga. 123 (205 SE2d 210), in which we explored this question at some length in closely analogous circumstances.

Although a confession was admitted into evidence Thomas made no request for the charge he now contends should have been given nor did he object to the charge actually given. Under established Georgia law there is no necessity to give a charge on the subject of the voluntariness of a confession unless there is a specific request for it. *Ivy v. State,* 220 Ga. 699, 704 (141 SE2d 541); *Harvey v. State,* 216 Ga. 174, 177 (115 SE2d 345) (both cases approved in *Curry v. State,* 230 Ga. 221 (196 SE2d 443) (no confession)). We have held above that the hearing before the judge outside the presence of the jury satisfied the Jackson v. Denno requirement for an objective determination of voluntariness. Therefore, this enumeration is without merit.

No reversible error having appeared, the judgment will be affirmed.

*Judgment affirmed. All the Justices concur.*

SUBMITTED SEPTEMBER 27, 1974 — DECIDED NOVEMBER 18, 1974.

*John J. Sullivan,* for appellant.

*Andrew J. Ryan, Jr., District Attorney, Arthur K. Bolton, Attorney General,* for appellee.