## 30322. BARROW v. THE STATE.

PER CURIAM.

This case is before this court on appeal and for mandatory review of the death sentence imposed. The appellant, Keithen Barrow, and Casterdale Jones were indicted in Oglethorpe County, Georgia, for the robbery and murder of William A. Pitts occurring on January 29, 1975. A severance was granted by the trial court. Appellant's trial began on April 29, 1975, and on April 30, 1975, a life sentence was imposed for armed robbery and the death sentence was imposed for murder.

Evidence was introduced during the trial to the following effect: William Alvin Pitts operated the Minute Service Grocery Store and the Minute Service Package

Store in Oglethorpe County, Georgia. On the evening of January 29, 1975, appellant and Casterdale Jones were at the home of Sara Nell Cofer. Appellant and Jones said they needed money, and appellant asked what time the Minute Service Package Store closed and who operated the store. Jones told appellant that he was going to rob somebody, and appellant told Sara Cofer to get him a stocking cap which he placed on his face. Appellant had a .22 caliber pistol.

At some time between 9:15 p.m. and 10:00 p.m. on January 29, 1975, appellant walked into the Minute Service Package Store where William Pitts was working alone. Appellant ordered a bottle of whiskey and Mr. Pitts required him to verify his age. When Mr. Pitts had his back to appellant, appellant pulled a pistol and demanded money. Mr. Pitts gave appellant the money from the cash register and begged not to be shot. Appellant assured Mr. Pitts that he would not harm him.

Appellant jerked the phone out of the wall, and then he shot twice hitting Mr. Pitts between the eyes with one of the shots. This bullet caused Mr. Pitts' death. Appellant ran out of the store and down the road.

1. In enumeration of error number 1 the appellant contends that the trial court erred in overruling the oral motion to suppress evidence obtained by virtue of a search and seizure without a search warrant and in ruling that the officers had received proper consent to search without a warrant.

Appellant apparently resided in a house with his sister Sereca Elder who was formerly married to Nathaniel Cannon. Appellant told police officers he had secreted the money from the robbery in a radio in Sereca Elder's home in Athens, Georgia. On the evening the police went to the house Nathaniel Cannon was there babysitting with his two-year-old child by Sereca Elder. He had custody of the home. The radio belonged to Nathaniel Cannon and he consented to the search of the house.

"When the prosecution seeks to justify a warrantless search by proof of voluntary consent, it . . . may show that permission to search was obtained from a third party who possessed common authority over or other sufficient

relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U. S. 164 (94 SC 988, 39 LE2d 242) (1974). Georgia cases are in accord. See *Marsh v. State,* 223 Ga. 590 (1) (157 SE2d 273) (1967).

It has been held also that one who allows another to share a container "must be taken to have assumed the risk that the [other person] would allow someone else to look inside." Frazier v. Cupp, 394 U. S. 731, 740 (89 SC 1420, 22 LE2d 684) (1964).

There is no merit in this contention.

2. In enumeration of error number 2 the appellant contends that, "Where appellant was indicted, tried, and convicted of malice aforethought murder and armed robbery, it was error and inconsistent for the court to charge and authorize the jury to impose a death sentence if the jury found aggravating circumstances that the offense of premeditated murder was committed while the appellant was engaged in the commission of an armed robbery or that the offense of murder was outrageously or wantonly vile, horrible, or inhumane in that it involved torture and depravity of mind."

Armed robbery is not a lesser included offense of the offense of malice murder. The court's charge followed Code Ann. § 27-2534.1 (b) (2) and (7) as required by (c) (Ga. L. 1973, pp. 159, 163). *McCorquodale v. State,* 233 Ga. 369 (12) (211 SE2d 577) (1974). The court properly instructed the jury that they could consider the armed robbery as an aggravating circumstance of the malice murder. The evidence authorized the jury to consider whether the murder was inhuman in that it involved depravity of mind. *Floyd v. State,* 233 Ga. 280 (5) (210 SE2d 810) (1974).

There is no merit to this contention.

3. In enumeration of error number 3 the appellant contends that it was error and harmful "for the court to instruct the jury on how to enter a verdict and that they were to only concern themselves at this stage with a guilty or not guilty verdict and that in the event of a guilty verdict they would later on enter the sentencing verdict."

Appellant relies on the decision of this court in *Gaither v. State,* 234 Ga. 465 (216 SE2d 324) (1975) where this court held it was error for the trial judge to instruct: "I

suggest that you just open each of these indictments and write your verdict at the top of this page, because later on in the sentencing feature of the case, you will have to write the sentencing feature in the bottom part of the page."

There is a marked distinction between the instruction condemned in *Gaither* and the instruction complained of in the case sub judice. In the instant case the instruction was: "In the event of a guilty verdict as to either count one or count two or as to both count one and count two, you would not concern yourselves with punishment because in such event of a verdict of guilty, there would be further proceedings in which evidence could be introduced touching on the question of punishment. The District Attorney and Public Defender would have the right to make additional statements to you touching on the question of punishment. At this stage you are to only concern yourselves with a verdict of guilty or not guilty as to count one and then guilty or not guilty as to count two. Whatever your verdict is, that would be a matter entirely for you, Ladies and Gentlemen, to determine. But as stated, you would only concern yourselves at this stage with a guilty or not guilty verdict."

This instruction did not intimate in any way that the jury should find appellant guilty or that a guilty finding was a foregone conclusion. The court did not err in charging the jury concerning the bifurcated trial procedure. *Shepherd v. State,* 234 Ga. 75 (4) (214 SE2d 535) (1975); *Cofer v. Hopper,* 233 Ga. 155, 157 (210 SE2d 678) (1974); *McRoy v. State,* 131 Ga. App. 307 (8) (205 SE2d 445) (1974).

4. The attack upon the constitutionality of the 1973 death penalty procedure (Ga. L. 1973, p. 159) in enumeration of error number 4 is without merit. *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *McCorquodale v. State,* 233 Ga. 369, supra; *Floyd v. State,* 233 Ga. 280, supra; *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12) (1974); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974).

5. In enumeration of error number 5 the appellant

contends, "It was error to allow the pathologist to give his opinion as to how long the deceased may have lived after being struck by the bullet."

Georgia law (Code § 38-1710) provides for the admission of opinions of experts on any question of science, skill, trade, or like questions. It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular art, science or profession as to entitle him to be deemed prima facie an expert. *Glover v. State,* 129 Ga. 717 (9) (59 SE 816) (1907); *Merrill v. State,* 130 Ga. App. 745 (5) (204 SE2d 632) (1974). The pathologist was the holder of a B.S. degree in chemistry, had three years of post-operative training at Emory University Medical School in the fields of anatomy and pathology, was employed six years by the State Crime Laboratory, had performed between 400 and 450 autopsies and had testified as to the cause of death in approximately 150 cases. It was not error for the trial judge to permit the pathologist to respond when asked if he had an opinion as to how long he (victim) may have lived after he had been shot that, "It would be difficult if not impossible to give you an exact time. I would say on the order of minutes though as opposed to hours and seconds."

6. In enumeration of error number 6 the appellant contends that, "It was error for the court to allow hearsay information over objection to the effect that one of the persons with appellant had stated they did not have any money."

When conversations are facts to ascertain motives they are admissible in evidence. Code § 38-302. The evidence shows that the "person with the appellant" was an accessory to the crimes. The appellant and the accessory in each other's presence asked the witness if he had any money. The appellant said he needed money and wanted to sell a tape player. The evidence was admissible to show the financial straits of appellant and his associate and furnished a motive for the crimes.

7. In enumeration of error number 7 the appellant contends that, "It was error for the court to allow over objection the sheriff's testimony that he tries to keep down this armed robbery and stuff."

The testimony objected to was elicited on cross examination in the following setting: "Q. You said you were up there at Mr. Pitts' store earlier that night. Why? A. I always check the areas that are open at night. Q. What were you checking for? A. Just seeing if everything was all right, just routine patrol to check. Q. I mean did you suspect anything to be wrong? A. No, sir, I did not. I wish if I had, I would have stayed there. Q. I meant previous to that. I did not mean anything afterwards. A. No, sir. Q. How often did you go by checking on Mr. Pitts? A. Two or three times a week. The other stores that are open the same way with them, two or three times a week, and then generally some of the deputies check on the places of business open at night. Q. Beg your pardon? A. My deputies check on places of business that are open at night, trying to keep down this armed robbery and stuff. Mr. Miller: Your Honor, I move that be stricken from the record. The Court: Exactly what? Mr. Miller: 'I try to keep down this armed robbery and stuff.' The Court: I think I will let it stay in."

Under the circumstances, the testimony of the sheriff was entirely responsive to the line of cross examination by appellant's counsel and explained the conduct of the witness. The trial court did not err in refusing to strike it from the record.

8. In enumeration of error number 8 the appellant contends that, "It was error to overrule the motion for a mistrial."

The mistrial motion was directed to testimony by the sheriff concerning a conversation with the victim prior to the offense. The sheriff testified that the victim had said: "You all sure are having real good luck as far as catching people who have committed crimes," and further testified: "And we were talking about catching the people and the county being real lucky and the juries were giving them tough sentences. They was going to slow it down some here in the county." Following both statements the trial court sustained an objection thereto by the appellant's counsel. After appellant's motion for mistrial the trial court stated he believed he could correct the situation sufficiently with an instruction and gave the following instruction: "The Court: Sheriff Smith related to you

certain conversation, a certain conversation he had with the deceased Mr. Pitts and I am ruling that out. It is hearsay and not within any exception to the hearsay rule. Wholly disregard any testimony as to conversation between the witness and Mr. Pitts and disregard that and give no credence to it in your deliberations in this case. Do you all understand that? If you do, nod your heads. Let the record show all the jurors nodded their heads in the affirmative. You may proceed."

"Where illegal evidence is admitted at the trial, it is not error to refuse the grant of mistrial if the illegal or harmful testimony can be corrected by proper instructions to the jury." *Woods v. State,* 233 Ga. 495, 498 (212 SE2d 322) (1975). Accord, *Lynch v. State,* 234 Ga. 446, 448 (216 SE2d 307) (1975); *Ivy v. State,* 220 Ga. 699 (141 SE2d 541) (1965). The decision not to declare a mistrial is within the discretion of the trial court, and this discretion should not be interfered with unless manifestly abused. *McCorquodale v. State,* 233 Ga. 369, supra; *James v. State,* 215 Ga. 213 (4) (109 SE2d 735) (1959).

Under the circumstances we find no abuse of discretion by the trial court.

9. In enumeration of error number 9 the appellant contends that, "It was error to allow hearsay information over objection that the informer stated 'He thought a lots of Mr. Pitts and he trusted me and said he didn't want no money.' "

On cross examination the appellant's counsel had asked a number of questions designed to reveal whether or not the informer would share in the outstanding reward money as a motive for informing. The testimony on redirect examination about what the informer had said merely explained the conduct of the informer and of the witness and was admissible under Code § 38-302. *Watkins v. State,* 231 Ga. 481 (202 SE2d 442) (1973); *Tanner v. State,* 228 Ga. 829 (3) (188 SE2d 512) (1972); *Pitts v. State,* 226 Ga. 878 (178 SE2d 177) (1970); *Jones v. State,* 224 Ga. 283 (3) (161 SE2d 302) (1968); *Phillips v. State,* 206 Ga. 418 (3) (57 SE2d 555) (1950); *Bryant v. State,* 191 Ga. 686 (14) (13 SE2d 820) (1941).

This contention is without merit.

10. In enumeration of error number 10 the appellant

contends that, "It was error for the court to overrule the motion to suppress the confession and incriminating statements made by the appellant."

The evidence at the Jackson-Denno hearing and at the trial shows that the appellant was given the Miranda warnings and intelligently, knowingly, and voluntarily confessed. *Stapleton v. State,* 235 Ga. 513. This enumeration of error is without merit.

11. In enumeration of error number 11 the appellant contends that, "It was error for the court to fail to charge without request on the law of confessions."

"Under established Georgia law there is no necessity to give a charge on the subject of the voluntariness of a confession unless there is a specific request for it. *Ivy v. State,* 220 Ga. 699, 704 (141 SE2d 541); *Harvey v. State,* 216 Ga. 174, 177 (115 SE2d 345) (both cases approved in *Curry v. State,* 230 Ga. 221 (196 SE2d 443))." *McCorquodale v. State,* 233 Ga. 369, supra. See also *Thomas v. State,* 233 Ga. 237, 241 (210 SE2d 675) (1974).

The fact that the trial judge at the conclusion of the Jackson-Denno hearing stated, "I will charge the jury on scanning confessions and incriminatory statements with care, my usual charge," excuses the appellant from the duty of requesting such charge at his trial, where as here it cannot be said the error was induced or was harmless. *Sims v. State,* 234 Ga. 177, 178 (214 SE2d 902) (1975) is not applicable here. *Sims* involved a charge on self-defense which is required when demanded by the evidence. Here the charge on confession was not required in any event absent a request. This enumeration of error is meritorious and requires a reversal of this case.

*Judgment reversed. All the Justices concur, except Gunter and Ingram, JJ., who concur in the judgment only as to the ruling made in Division 11, and Undercofler, P. J., who dissents from the ruling made in Division 11 and from the judgment of reversal.*

ARGUED OCTOBER 6, 1975 — DECIDED DECEMBER 2, 1975.

*J. Cleve Miller,* for appellant.

*Clete D. Johnson, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler,* for appellee.