71143. LUKE v. THE STATE.
(344 SE2d 452)

BANKE, Chief Judge.

Following a bench trial, the appellant was found guilty of trafficking in cocaine (OCGA § 16-13-31 (a)); possession of less than one ounce of marijuana (OCGA § 16-13-2 (b)); and possession of a firearm by a convicted felon (OCGA § 16-11-129 (b)). All the contraband was discovered during the course of a warrantless search of the appellant's

residence, conducted by appellant's wife's probation officer with the assistance of several other law enforcement officers, pursuant to a condition of the wife's probation requiring her to "submit her person, vehicle, and residence to search for drugs (drugs only) at all times by any proper officer without a warrant." On appeal, the appellant contends that the evidence does not establish that he was in possession of the contraband and also contends that the contraband should have been suppressed as the fruit of an unlawful search.

The search resulted in the seizure of the following items from the "master bedroom" of the appellant's home: an automatic pistol, ownership of which was acknowledged by the appellant, discovered in the top drawer of a dresser; a .22-caliber pistol, discovered on top of the same dresser; a plastic bag containing marijuana, discovered in the top drawer of a nightstand; and a brown leather bag, discovered in the closet, containing triple beam scales, plastic sandwich bags, and two glass bottles filled with 43.9 grams of white powder determined to be .001 percent cocaine. Also seized, from inside a chifforobe located in the garage, were two bags containing 4.4 grams of white powder determined to be .016 percent cocaine.

At her probation revocation hearing, Mrs. Luke testified that the chifforobe had belonged to her recently deceased brother-in-law and had been stored in the garage at the request of her husband's mother. Until his death two weeks earlier, the appellant's deceased brother had lived in the house with the appellant and his wife. However, at the time of the search, the home was occupied only by the appellant, his wife, and their two children. *Held:*

1. "Under the 'equal access' rule, . . . the inference of constructive possession which attaches to an owner or lessee of certain premises is rebuttable by an affirmative showing that persons other than the defendant owner or lessee had equal access to the premises where the contraband was found. [Cits.] Where it is affirmatively shown that others had equal access or opportunity to commit the crime, the mere discovery of the contraband on the defendant's premises is insufficient to support a conviction. [Cits.]" *Shreve v. State*, 172 Ga. App. 190, 191 (322 SE2d 362) (1984). It having been established without dispute that the chifforobe in the garage had belonged to the appellant's deceased brother, it follows that the evidence was insufficient to warrant the inference that the appellant was in possession of the 4.4 grams of cocaine therein. However, the appellant's conviction of trafficking in cocaine was obviously not based on this relatively small amount of contraband but on the 43.9 grams of white powder found in the closet in the "master bedroom."

Because the appellant, his wife, and their two children were the only persons living in the house when the search took place, and because the appellant admitted ownership of one of the two pistols

found in the dresser drawer of the bedroom in question, we hold that, in the absence of evidence to the contrary, a rational trier of fact could reasonably have inferred that the appellant "occupied" the master bedroom, either by himself or with his wife. The evidence was therefore sufficient to warrant the conclusion that he was in constructive possession, either by himself or jointly with his wife, of all the items seized therein. Accord *Prescott v. State,* 164 Ga. App. 671 (1) (297 SE2d 362) (1982); *Sheppard v. State,* 138 Ga. App. 597 (4) (226 SE2d 744) (1976).

2. For the following reasons, we hold that the officers' reliance on the search authorization appearing in the appellant's wife's probation order was justified and that the trial court accordingly did not err in denying the motion to suppress.

The condition was specifically acknowledged by the appellant's wife at the time the probation order was entered and was thus at least impliedly consented to by her as an acceptable alternative to prison. Furthermore, the record reveals that the wife had just completed a prior period of probation for possessing illicit drugs at the time the condition was imposed and that she had expressed to the sentencing judge a solemn commitment to cease using such drugs. This commitment was obviously a major factor in the judge's decision to place her on probation again rather than sending her to prison, and the condition was thus clearly tied to a legitimate rehabilitative purpose. Furthermore, the resulting curtailment of her Fourth Amendment rights was certainly no more severe than would have been the case had she been sentenced to imprisonment or sent to a halfway house or diversion center rather than being released on probation. Accord *Smith v. State,* 250 Ga. 438, 439 (3) (298 SE2d 482) (1983) (upholding a requirement that a probationer produce body fluid, upon request, for analysis as an aid in determining his compliance with a prohibition against the use of controlled substances).

Because we find the search authorization provision contained in the probation order to have been reasonable and appropriate under the circumstances, the legality of the search, in our view, turns on whether the provision was invoked in good faith for the purpose of monitoring the extent of the wife's compliance (or lack of compliance) with the terms of her probation or whether it was instead invoked arbitrarily, or for harassment, or as a ruse to permit a warrantless search of her husband's belongings. If the provision was invoked in good faith, then it follows that the search must be considered a reasonable and lawful exercise of authority on the part of the law enforcement officers conducting it. Furthermore, if the officers were authorized to conduct the search, then we do not believe the admissibility of the items seized during the course of it should be affected by the identity of the person or persons incriminated by those

items. Generally speaking, if a police officer has the right to be where he is and to observe what he is observing at the time he discovers and seizes an item of contraband, then no good purpose whatever will be served by excluding that item of contraband from evidence.*

The search was conducted on November 5, 1982. At the hearing on the motion to suppress, the appellant's wife's probation officer testified that she had made the decision to institute revocation proceedings in late August or early September of that year, based on information that the wife had recently been arrested in Clayton County for D.U.I. and possession of marijuana and had recently pled guilty in Fulton County to possession of cocaine. The officer stated that although she believed she already had enough evidence to proceed with a revocation petition at that time, she desired first to conduct a search of the wife's home for the purpose of obtaining additional evidence as to the extent of her violations. She testified that she contacted Mr. Bobby Taylor, an investigator in the district attorney's office, to seek his assistance in carrying out the search but was advised by him to "hold off" for a while, so as not to interfere with what was evidently an ongoing drug investigation involving both the appellant and his wife.

The probation officer stated that she again contacted Taylor both in mid-September and in mid-October to set up a search but was asked again on both occasions to hold off. Finally, around the end of October, she went to the office of the sentencing judge, told him of her intention to initiate revocation proceedings and of her desire first to conduct a search of the residence, informed him that she had been holding off conducting the search at the request of Mr. Taylor, and advised the judge that she was concerned that if she continued to delay in bringing the revocation petition, questions might be raised as to why she had not acted sooner. She testified that the judge responded by speaking briefly with Taylor on the telephone and then informing her that Taylor would be back in touch with her. A few days later, Taylor contacted her, and the search was set up for that same afternoon.

We hold that this evidence was sufficient to support a determination by the trial judge that the search was "actuated by the legitimate operation of the probation supervision process" rather than by some other, more nefarious motive. See generally *Hunter v. State*, 139 Ga.

---

* This is not to say that the admissibility of the evidence seized during a search may never be affected by the identity of the defendant against whom it is introduced. A search may, for example, be unlawful in the sense that it was not supported by probable cause or was conducted without a warrant when one was required, yet the defendant in question may have no standing to object to it due to the lack of any possessory interest in the item seized or reasonable expectation of privacy in the area searched. See, e.g., *Robertson v. State*, 161 Ga. App. 715, 716-717 (288 SE2d 362) (1982).

App. 676 (2), 678 (229 SE2d 505) (1976); *Lillard v. State*, 156 Ga. App. 54, 55 (274 SE2d 96) (1980). We therefore hold that the search constituted a lawful and reasonable exercise of police power, standing on the same footing with respect to legality as a search conducted pursuant to consent.

" '[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that the permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.' *United States v. Matlock*, 415 U. S. 164, 171 (1974). See *Barrow v. State*, 235 Ga. 635, 636 (1) (221 SE2d 416) [1975]." *State v. Floyd*, 161 Ga. App. 48, 50 (289 SE2d 8) (1982). The appellant's wife obviously possessed such authority with respect to the premises in question, and it follows that the trial court did not err in denying the appellant's motion to suppress.

*Judgment affirmed. Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, Pope, and Beasley, JJ., concur. Benham, J., dissents.*

BENHAM, Judge, dissenting.

Unlike the majority, I find the evidence insufficient to support appellant's convictions. I also believe that appellant's motion to suppress should have been granted.

The contraband was discovered in a warrantless search of appellant's residence conducted by appellant's wife's probation officer and law enforcement officers, pursuant to a condition of Mrs. Luke's probation. The transcript of the bench trial, as well as the stipulations entered into therein, and the transcript of Mrs. Luke's probation revocation hearing (the trial court's consideration of which was authorized by the parties) reveal the following facts. The probation officer who was admitted to the Luke home informed Mrs. Luke of her intention to search the premises pursuant to the condition contained in Mrs. Luke's probation order. Mrs. Luke "called for her husband, he was in the back . . . and the officers came in and they went and they conducted the search." It was stipulated that the officer who searched the master bedroom found in the top dresser drawer an automatic pistol of which appellant claimed possession or ownership; on the top of the dresser a .22 caliber pistol; in the top drawer of a nightstand a plastic bag containing marijuana; and in a closet, a brown leather bag containing triple beam scales, plastic sandwich bags, and two glass bottles containing 43.9 grams of white powder later determined to be .001 percent cocaine. In the garage, another officer found two bags of white powder under clothing in a chifforobe. The 4.4 grams of white powder were found to be .016 percent cocaine. At her probation revo-

cation hearing, Mrs. Luke testified that the chifforobe belonged to her recently-deceased brother-in-law and had been stored in the Lukes' garage at the request of appellant's mother. At the bench trial, appellant affirmatively showed the trial court that at the time of the search the home was occupied by appellant, his wife, their two children, and, up until two weeks prior to the search, appellant's now-deceased brother, the undisputed owner of the chifforobe.

" 'A connection can be made between a defendant and contraband found in his presence by evidence which shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others. [Cit.] Such occupation and control may be inferred when the accused is the owner or tenant of the premises upon which the illicit drugs are discovered. [Cits.]' Under the 'equal access' rule, however, the inference of constructive possession which attaches to an owner or lessee of certain premises is rebuttable by an affirmative showing that persons other than the defendant owner or lessee had equal access to the premises where the contraband was found. [Cits.] Where it is affirmatively shown that others had equal access or opportunity to commit the crime, the mere discovery of the contraband on the defendant's premises is insufficient to support a conviction. [Cits.]" *Shreve v. State*, 172 Ga. App. 190, 191 (322 SE2d 362) (1984).

The contraband which appellant was found guilty of possessing was found in the master bedroom. However, the record contains no evidence which connects appellant more closely than the other residents of the home to the dresser, the nightstand, or the closet where the contraband was discovered. See *Shreve v. State*, supra at 192; *Prescott v. State*, 164 Ga. App. 671 (2) (297 SE2d 362) (1982); *Smith v. State*, 156 Ga. App. 102 (1) (273 SE2d 918) (1980); *Wright v. State*, supra. Compare *Prescott*, Division 1 (defendant's clothes found in closet where contraband was found); *Wright*, Division 1 (defendant admitted occupying the bedroom in which marijuana was found in plain view, and defendant was smoking marijuana when the police arrived); *Tuggle v. State*, 149 Ga. App. 634 (7) (255 SE2d 104) (1979) (contraband found in the bedroom the defendant admittedly occupied). Finally, although it is not res judicata of the issue, we note that the trial court specifically refused to base a revocation of Mrs. Luke's probation on the fruits of the search, "it appearing that other people had equal access and no further evidence being presented."

The State argues that appellant's admission that he lived at the residence, his presence in the bedroom when the officers arrived, and his admitted ownership of a gun found in the room is sufficient evidence to connect him with the contraband found in the room. I disagree. In the first place, my analysis has been based on the assumption that appellant lived at the home searched; secondly, there was no evi-

dence presented at trial that appellant was in the bedroom — the probation officer stated that Mrs. Luke "called for her husband, he was in the back. . . ." Finally, while appellant claimed one of the guns discovered in the bedroom as his, the trial court found him not guilty of possessing that firearm, and that gun in no way connected him with the rest of the contraband. Furthermore, we cannot infer from the fact that the contraband was found in a household headed by appellant that it belonged to him. *Knighton v. State*, 248 Ga. 199 (2, 3) (282 SE2d 102) (1981).

Based on the foregoing facts, I believe the evidence was insufficient as a matter of law under the equal access doctrine to support the judgments of conviction.

As stated earlier, I disagree with the majority's conclusion that the motion to suppress was properly denied. When Mrs. Luke received a probated sentence in June 1980, a special condition imposed by the trial court as a part of the sentence was that "[s]ubject shall submit her person, vehicle and residence to search for drugs (drugs only) at all times by any proper officer without a warrant." The majority bases its conclusion that the search and seizure were proper on the premise that Mrs. Luke "impliedly consented" to the search when she accepted the terms of her probation "as an acceptable alternative to prison." "To substantiate a 'proper consent' to search, the State must prove 'that the consent was in fact, freely and voluntarily given.' *Bumper v. North Carolina*, 391 U. S. 543, 548, 88 SCt. 1788, 1792, 20 LE2d 799 (1968). . . . The Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.' *Schneckloth [v. Bustamonte*, 412 U. S. 218 (93 SC 2041, 2048, 36 LE2d 854) (1973)]." *United States v. Smith*, 395 FSupp. 1155, 1156-57 (W.D.N.Y. 1975). It is my position that a defendant's submission to warrantless searches and seizures should not be the price of probation.

When a defendant accepts as a condition of probation the severe curtailment of his constitutional rights to be free from unreasonable search and seizure in lieu of incarceration, he has not chosen at all. "The damoclean choice of imprisonment would rarely be chosen over probation, even if the probationer must accept severe inroads on protections afforded by the Bill of Rights." *State v. Page*, 115 Ariz. 131 (564 P2d 82, 84) (1976), vacated, 115 Ariz. 156 (564 P2d 379) (1977). It is, in fact, a Hobson's choice (*State v. Morgan*, 206 Neb. 818 (295 NW2d 285, 290) (dissent) (1980); a choice between the lesser of two evils. *State v. Means*, 177 Mont. 193 (581 P2d 406, 416) (1978) (dissent); majority opinion overruled in *State v. Fogarty*, 187 Mont. 393

(610 P2d 140) (1980). It, in fact, amounts to no voluntary choice, but is, in legal effect, coerced. Id.; *Dearth v. State,* 390 S2d 108 (Fla. App. 1980); *Roman v. State,* 570 P2d 1235, 1241-42 (Alaska 1977); *Tamez v. State,* 534 SW2d 686 (Crim. App. Tex. 1976); *State v. Peterson,* 62 Mich. App. 258 (233 NW2d 250) (1975). But see *State v. Richards,* 76 Mich. App. 695 (256 NW2d 793) (1977). Since I am not of the opinion that Mrs. Luke knowingly, intelligently, and voluntarily consented to a search of the home she shared with appellant when she acknowledged the conditions of her probation, I must dissent.

Even if the condition of probation is viewed as a valid consent to search, its breadth should be more limited than that which the majority gives it. I would hold that the fruits of a warrantless search of a probationer's residence conducted pursuant to the probationer's "consent" given in exchange for probation may only be used against the probationer.

Similar conditions of probation have passed appellate muster in this state in situations where the probationer is living in a diversion center (*Lillard v. State,* 156 Ga. App. 54 (1) (274 SE2d 96) (1980); *Austin v. State,* 148 Ga. App. 784 (2) (252 SE2d 696) (1979)); a restitution shelter (*Hunter v. State,* 139 Ga. App. 676 (2) (229 SE2d 505) (1976)); and a halfway house (*Dean v. State,* 151 Ga. App. 847 (261 SE2d 759) (1979)). In each of the above-cited cases, the contraband discovered pursuant to the search was used as evidence to revoke the probationer's probation or was the foundation for new criminal charges assessed against the probationer. Here, we face a new factual situation: the residence searched is a private home, and the contraband discovered is used, not against the probationer whose condition of probation permitted the warrantless search, but against another person residing in the same house.

This case is not the proper vehicle to decide whether the warrantless search condition of probation authorizes a search of a probationer's private residence. Compare *United States v. Workman,* 585 F2d 1205 (4th Cir. 1978); *State v. Pinson,* 104 Idaho 227 (657 P2d 1095) (1983); *State v. Perbix,* 331 NW2d 14 (N.D. 1983); and *State v. Fogarty,* supra. Instead, I focus on the propriety of using the fruits of the warrantless search against someone other than the probationer who is suspected of violating the terms and conditions of his/her probation. This certainly is a question of first impression in Georgia and is one of only a handful of cases from throughout the country that addresses the issue.

The analysis must begin with the principle that the Fourth Amendment to the United States Constitution and Art. I, Sec. I, Par. XIII of the 1983 Georgia Constitution protect the individual from unreasonable search and seizure. Generally, a warrantless search is unreasonable per se unless it falls within certain specific and well-delin-

eated exceptions to the warrant requirement, i.e., search incident to an arrest; consent search; weapons patdown; plain view doctrine; and exigent circumstances. "One of the most important reasons for requiring a search warrant as a condition to a search is a recognition that reasonable restraints must be placed upon law enforcement officials before a search is conducted rather than simply to measure the validity of a search by a post-search inquiry into its reasonableness. If abuses are to be discouraged, it does little good to provide post-search judicial review, for this neither deters unreasonable searches nor remedies those which have occurred. . . . [T]hat is precisely why it is considered wise if individual rights are to be valued, to place a neutral judge between the law enforcement authorities and the subject of the search." *State v. Fogarty*, supra at 152. " 'The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. . . . The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.' [Cit.]" *Bunn v. State*, 153 Ga. App. 270, 274 (265 SE2d 88) (1980). The remedy for violation of the constitutional standard is the exclusion of the material illegally seized from the body of evidence presented against the defendant at trial. Claiming that his constitutional rights against unreasonable search and seizure were violated, appellant sought that relief by means of a motion to suppress. After reviewing the facts in the case at bar and the emerging case law on the issue, I must agree with appellant that the evidence seized in the warrantless search conducted pursuant to a condition of his wife's probation should not have been used against him.

While a probationer's right of privacy may be justifiably diminished during the period of probation (see *Inman v. State*, 124 Ga. App. 190 (2) (183 SE2d 413) (1971)), "[p]robationary status does not convert a probationer's family, relatives and friends into 'second class' citizens. . . . These people are not stripped of their right of privacy because they may be living with a probationer or [s]he may be living with them." *State v. Fogarty*, supra at 151. The Supreme Court of Montana, the only court in the country to address the ramifications of the warrantless search condition of probation on third parties living with a probationer, concluded that a search warrant based on probable cause must be obtained before a probationer's residence may be searched "so that the legal interests of innocent third persons can be adequately protected. . . ." Id. at 152. In Georgia, while we have not required pre-search judicial intervention, post-search review has focused on the reasonableness of the search of the probationer's residence. See, e.g., *Lillard v. State*, supra; *Austin v. State*, supra; *Hunter v. State*, supra. I again stress that none of these searches in-

volved a private residence shared with others. This case presents the opportunity to fashion some rule in order to protect the rights of those who live with a probationer whose probation is conditioned on warrantless searches of the residence. Failure to do so results in the present situation: a third person not under the warrantless search condition of probation loses his constitutional right to be free from unreasonable searches and seizures by living with his probationer-spouse. He stands convicted of possession of contraband uncovered in a search of his home not based on probable cause. To prevent such a usurpation of constitutionally guaranteed rights, I believe that fruits of a warrantless search of a probationer's residence may only be used against the probationer who had the warrantless search clause as a condition of probation. If the State wishes to use the evidence seized against a person who shares the probationer's residence, a pre-search establishment of probable cause (i.e., a search warrant) should be necessary. In the case at bar, the State used evidence seized in the warrantless search of a residence against a person who did not have as a condition of his probation a warrantless search clause. Since the search and seizure were unreasonable as to appellant, the fruits of the search should have been suppressed. Without that evidence, appellant's convictions of possession of less than one ounce of marijuana; possession of a firearm by a convicted felon; and trafficking in cocaine must fall.

DECIDED MARCH 21, 1986 —
REHEARING DENIED APRIL 4, 1986 — 

*J. Kelley Quillian, J. Wayne Moulton,* for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney,* for appellee.