32067. BELL v. THE STATE.
32136. ELLERBEE v. THE STATE.
32186. GANTT v. THE STATE.

UNDERCOFLER, Presiding Justice.

Appellants Bell, Ellerbee and Gantt were convicted in Fulton Superior Court in a joint trial for the armed robbery and murder of James Edmondson, Sr., professionally known as Professor Backwards. A fourth indictee, Michelle Sipp, housekeeper for Edmondson, testified for the state. Bell and Ellerbee pleaded not guilty and did not testify at trial. Gantt pleaded not guilty by reason of delusional insanity and testified.

Each defendant was sentenced to life imprisonment for murder and to twenty years for armed robbery, the sentences to run concurrently. These appeals followed. We affirm. The principal attack by all appellants seeks to invoke the rule in Bruton v. United States, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) alleging error in denying severance and then permitting the introduction of the content of out-of-court statements by co-defendants containing inculpatory references to a defendant on trial.

The evidence in the case shows Michelle Sipp was a live-in housekeeper for James Edmondson, Sr. She testified she was injured by Edmondson's son and during

treatment at a local hospital met Michael Gantt. Later, Gantt visited her several times at the Edmondson residence. Ms. Sipp had access to Edmondson's checkbook and, on one occasion, Gantt cashed one of Edmondson's checks for $175 which was later returned as a forgery. Before the return of this check, Gantt and Ms. Sipp were talking on the telephone and Edmondson overheard Gantt asking Sipp for another check. Edmondson cursed Gantt and hung up. Later, Gantt testified, Sipp called him and asked him to come over because she feared for her life. Gantt then testified he contacted appellants Ellerbee and Bell, whom he identified only as "Tony" and "Slim" and asked them to accompany him "to a party" at Edmondson's house. Gantt asked Bell where they could get a gun. Bell secured a .32 caliber pistol and the three co-defendants went to Edmondson's house by taxi. Ms. Sipp testified she heard Edmondson go to the front door; heard voices asking to use the telephone and soon afterwards Edmondson asking someone not to hurt him. Gantt, producing the pistol, demanded $5,000. Edmondson said he did not have that much and Gantt told him to produce it or he would be killed. Edmondson eventually gave Gantt a check for $300, and appellants waited in the house with Edmondson and Ms. Sipp throughout the night for the banks to open the next morning. While waiting, the co-defendants alternated in holding the gun on Edmondson, and two of them, Ellerbee and Bell sexually assaulted Ms. Sipp and attempted to rape her, but Gantt stopped them. Around 8:30 a.m. the next morning, the three co-defendants and Edmondson left the house in Edmondson's 1973 brown Cadillac, telling Sipp to stay in bed and not to call police or they would be back for her. With Bell at the wheel and Edmondson next to him in the front seat and Ellerbee and Gantt in the back seat, the parties drove around for over an hour. Then, the car was stopped at Gantt's instruction on Watts Road, a gravel road near Bankhead Highway, where Gantt, Ellerbee and Edmondson got out of the car. Bell drove the car away, turned it around and stopped. Gantt shot Edmondson above the left eye, and after he fell to the ground, Gantt shot Edmondson two more times above the left ear, killing him. Gantt and Ellerbee re-entered the car

and Gantt attempted to cash the $300 check at a local convenience store without success. The three appellants abandoned the car and dispersed to their homes, Bell taking the pistol from Gantt and hiding it under his bed at home.

After Edmondson's body was found, Ms. Sipp went to the College Park police and reported the incidents of Edmondson's kidnapping. She later identified Gantt as one of those involved. He was arrested, given the Miranda warnings and he signed a waiver of counsel form prior to making a statement. In his first statement, he denied the slaying but identified his other two companions as "Tony" and "Slim." Ellerbee, later identified as "Tony" and Bell identified as "Slim," were arrested early the next morning. They were advised of their Miranda rights, signed waiver of counsel forms and gave corroborating statements identifying Gantt as the slayer of Edmondson.

The following afternoon, the three men were jointly interrogated following a reminder of the Miranda warnings to clear up "certain discrepancies" in their statements. Ellerbee and Bell voluntarily participated in this discussion. Gantt at first refused to participate until after the interview was well under way but later he waived the presence of counsel and freely participated in the discussion. Gantt made several conflicting statements during the investigative phase of the case, however, he finally admitted the killing stating "voices" told him to kill Edmondson because he had issued a "cassette-type" contract to have Gantt killed. A Jackson-Denno hearing was held during trial and the judge determined all statements were freely and voluntarily made by the three defendants.

1. Bell, Ellerbee and Gantt raise the Bruton issue claiming that during trial the out-of-court statements of the other co-defendants, inculpating them, were substantially introduced through the testimony of police officers investigating the case, thus violating the holding of the United States Supreme Court in Bruton v. United States, 391 U. S. 123, supra, prohibiting such testimony because it denies co-defendants of the right of confrontation under the Sixth and Fourteenth Amend-

ments to the U. S. Constitution.

This enumeration of error was considered recently under similar circumstances in *Baker v. State,* 238 Ga. 389 (233 SE2d 347) (1977). The convictions in that case were affirmed on the basis of harmless error.

A careful review of the written statements contained in this record and of the voluminous transcript of trial shows that the rule in Bruton was violated. However, as we held in *Baker,* the introduction of these statements was harmless error under Schneble v. Florida, 405 U. S. 427 (92 SC 1056, 31 LE2d 340) (1972). In that case, the U. S. Supreme Court held that "Any violation of Bruton that might have occurred was harmless beyond a reasonable doubt in view of the overwhelming evidence of petitioner's guilt as manifested by his confession, which completely comported with the objective evidence, and the comparatively insignificant effect of the co-defendant's admission." Schneble v. Florida, supra, at p. 427.

Gantt pleaded not guilty by reason of delusional insanity, thus admitting the crime but resting his case upon the absence of the requisite intent to murder. His confession was substantially introduced through testimony of investigating officers and upon taking the stand under cross examination, Gantt stated his admission of guilt was true as was the rest of the content of his final statement admitting the crime. He acknowledged that he alone killed Edmondson. Bell and Ellerbee's statements were merely cumulative as to the events during the criminal conspiracy. Under these circumstances, Bruton does not require a reversal of Gantt's conviction.

Bell's statement was the most detailed of those given to investigating officers. He admitted going with Gantt and Ellerbee, getting the pistol for Gantt, going to Edmondson's house, participating in the night-long attempt to get $5,000 and of attempting to subdue Ms. Sipp. Further, he admitted leaving the house in Edmondson's Cadillac and driving to a secluded spot where he let Ellerbee and Gantt out of the car with Edmondson. He stated he saw the men together, heard the three shots, saw Gantt and Ellerbee run toward the car and that he picked them up. He stated he asked for and Gantt gave

him the pistol and he took it home with him. He told of driving to a convenience store where Gantt tried unsuccessfully to cash the $300 check. He told of abandoning the car and later going back to it and using it to drive over to his girlfriend's home where he abandoned it nearby. He raised the Bruton issue, seeking reversal because the substance of Gantt's and Ellerbee's statements, related to the jury by Gantt and investigative officers, implicated him. The references to Bell by Gantt and Ellerbee were merely cumulative of Bell's own confession, and in view of Gantt's confession to the murder, no material prejudice can be shown by Bell under the holdings in Schneble and *Baker*.

Ellerbee also argues the Bruton rule, but his confession, like that of Bell's, was cumulative as to minor details of the criminal conspiracy. The only difference between Bell's and Ellerbee's statements was in Ellerbee's statement that he did not get out of the car on Watt's road with Gantt and Edmondson, but from *inside* the car saw Gantt shoot Edmondson "at least twice in the head." Since Gantt admitted killing Edmondson, and Ellerbee and Bell both confessed to being at the scene, it was immaterial from what position either of them saw the killing.

There was no prejudice to any of these defendants under the ruling in Schneble and the violation of Bruton was harmless error. *Baker v. State,* supra; Schneble v. Florida, supra.

2. Ellerbee and Gantt argue that severance should have been granted them because their defenses were antagonistic and that the court knew that statements made by the co-defendants containing inculpatory references to them would be tendered during a joint trial. There is no merit to these contentions under the facts and holding in Division 1. "Where the death penalty is waived ... defendants may be tried jointly or separately in the discretion of the court." Code Ann. § 27-2101. *Woodruff v. State,* 233 Ga. 840, 843 (213 SE2d 689) (1975). "The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal." *Cain v. State,* 235 Ga. 128, 129 (218 SE2d 856) (1975) and cits.

3. Gantt and Ellerbee argue for the first time on

appeal that the court below erred in charging the jury in regard to confessions and admissions without defining admissions and confessions. We find no error. The record here shows there was no objection by either counsel following the charge on this issue, and the charge given on confession was verbatim as that requested by Ellerbee. *Thomas v. State,* 233 Ga. 237, 241 (210 SE2d 675) (1974); *Patterson v. State,* 233 Ga. 724, 731 (213 SE2d 612) (1975).

4. Ellerbee and Gantt also argue their convictions for armed robbery are erroneous because the murder was a probable consequence of the armed robbery. There is no merit to this contention under the facts of this case.

5. We have reviewed the other enumerations of error and find them without merit. The evidence supports the verdicts.

*Judgment affirmed. All the Justices concur.*

32067, Submitted February 25, 1977; 32136, Argued April 11, 1977; 32186, Submitted April 8, 1977 — Decided May 12, 1977 — 32186, Rehearing denied June 7, 1977.

*R. Allen Hunt,* for Bell.

*Cohen, Traub & Mackin, Dennis S. Mackin,* for Ellerbee.

*Luman C. Earle, L. Paul Cobb, Jr.,* for Gantt.

*Lewis R. Slaton, District Attorney, Carole E. Wall, Assistant District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.