## 36220. DICK v. THE STATE.

CLARKE, Justice.

The appellant, Dennis Dick, was convicted by a jury in the Superior Court of Dawson County for armed robbery and the murder of O. C. (Red) Rider. He was sentenced to death for murder and to life imprisonment for armed robbery. This case is here on direct appeal and for mandatory review of the death sentence.

### Summary of Facts

From the evidence presented at trial, the jury was authorized to find the following facts:

The appellant was a resident of Hall County and was familiar with the business establishment operated by the victim, O. C. (Red) Rider, in Dawson County. The victim had acquired a reputation as a bootlegger and was well known throughout Dawson County. Together with Bill Webster and Christopher Hoerner, appellant had

been drinking, and about 9:00 p.m. on June 2, 1979, the three companions left in a car belonging to Hoerner for the purpose of getting more beer. As they traveled toward the victim's place of business, the three men formulated a plan to rob the victim. The familiarity of appellant with the victim's place of business was illustrated by the fact that he directed the driver to the location.

Upon arriving at the trailer in which the victim operated his business, Hoerner gave a pistol to appellant, and appellant and Webster entered the trailer. Finding the victim to be alone, the two men bought a six-pack of beer and paid for it. As the victim turned around, appellant pulled the pistol and told him to freeze and give him his money.

Appellant in his statement admitted shooting the victim one time but told authorities that he did so only when the unarmed victim advanced upon him after refusing to turn over the money. Forensic evidence, however, established that the victim was shot behind the left ear with a .38 caliber pistol. There was also evidence of bruises and abrasions on the victim's forehead and left cheek. When the victim was found, he was lying face down in a hallway of the trailer and was not near the counter where the beer was sold. In addition, a bullet hole was found in the floor next to the victim's head bearing out testimony of witnesses that two shots and not one had been heard. The victim's pockets were turned inside out, and the telephone was found torn from the wall.

While the robbery was still in progress, John Bolton, Doyle Martin and Teresa Grant drove up to the trailer. As they stopped, Christopher Hoerner, who was acting as lookout, stuck a shotgun out the window of his car and told the three not to move. When Webster and appellant ran out of the victim's trailer, appellant ordered the three out of the car at gunpoint and told them to lie on the ground. The two robbers then got back into their car to flee but ran the car into a ditch. At this point, appellant returned and told the three persons lying on the ground to run into the woods and not look back or he would kill them. Having chased away the witnesses, appellant attempted to crank their car but was unable to do so. The three robbers were finally able to flee, however, when Hoerner and Webster finally freed their car from the ditch. At about this time, Terry Allen arrived upon the scene and saw someone running across the yard to the car used by the robbers. He went inside the trailer and discovered the body of the victim and contacted the authorities. Appellant and his co-defendants abandoned the car in which they were fleeing after it broke down. Local law enforcement authorities traced the car to its owner through its tag which had been torn off when it went into the ditch. This information subsequently led authorities to the

appellant, and he was arrested the next day after he had walked most of the way to Hoerner's trailer from where the car was abandoned. The other two co-defendants were subsequently arrested also. A metal money box was recovered, but the murder weapon was never found.

### Enumerations of Error

(1) The appellant in his first enumeration of error complains that the trial court erred in failing to grant a change of venue. The appellant argues that because of pre-trial publicity and local knowledge of the crime, it was impossible to obtain an impartial jury.

At the outset, we note that the record contains no evidence of prejudicial pre-trial publicity. Appellant concedes that there is no evidence of a "total inundation of the judicial process by the media." Sheppard v. Maxwell, 384 U. S. 333 (86 SC 1507, 16 LE2d 600) (1966); Estes v. Texas, 381 U. S. 532 (85 SC 1628, 14 LE2d 543) (1965).

Rather, appellant relies upon the fact that each prospective juror had heard something about the case. However, each prospective juror not struck for prejudice expressly indicated that he or she could lay aside any opinion he or she had formed and render a sentence based solely upon the evidence. *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979); Irvin v. Dowd, 366 U. S. 717 (81 SC 1639, 6 LE2d 751) (1960).

The victim was well known in the community but this alone does not indicate that the jury drawn from that community is death prone. *Collier v. State,* supra.

The record in this case shows that 120 prospective jurors were examined. The appellant was allowed an additional 10 strikes and the state an additional 5. The jurors were examined outside the presence of each other. *See Collier v. State,* supra. Of these jurors, 49 were excluded for normal cause (prohibited degree of relationship to the victim or prosecutor, unalterable opposition to the death penalty, etc.). Thirteen were excused for prejudice or a fixed opinion as to guilt or innocence. This low percentage of veniremen excused for prejudice (approximately 10%) strongly corroborates the expressions of impartiality by the other jurors who were not excused for prejudice. Murphy v. Florida, 421 U. S. 794 (95 SC 1555, 43 LE2d 772) (1974); *Tucker v. State,* supra (5% dismissal rate corroborates absence of prejudicial bias); *Collier v. State,* supra (20% dismissal rate corroborates absence of prejudicial bias); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976) (46% dismissal rate corroborates absence of prejudicial bias); *Butler v. State,* 231 Ga. 276 (201 SE2d 448) (1973) cert. den., 420 U. S. 907 (1974) (36% dismissal rate corroborates absence of prejudicial community bias); cf. Irvin v. Dowd, supra

(62% dismissal rate corroborates actual juror partiality).

Furthermore, the appellant failed to exhaust all of his peremptory challenges. *Coleman v. State,* supra; *Davis v. State,* 241 Ga. 376 (247 SE2d 45) (1978). We also note that the state presented an overpowering and overwhelming mass of evidence, on the question of appellant's guilt. The appellant did not dispute such evidence and in fact admitted under oath that he was the triggerman. Under this evidence, no other verdict could have been returned by a rational trier of fact. See *Coleman v. State,* supra; Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

A motion for change of venue lies within the sound discretion of the trial judge. *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Allen v. State,* 235 Ga. 709, 712 (221 SE2d 405) (1975); *Coleman v. State,* supra. We find no abuse of discretion here.

Appellant also asserts that certain jurors were improperly excused in violation of the rule of Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). However, each such prospective juror upon voir dire responded that he or she could not impose the death penalty under any set of circumstances. The jurors' responses satisfied the test set forth in Witherspoon, supra, as reiterated in Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978). *Harris v. Hopper,* 243 Ga. 244 (253 SE2d 707) (1979); *Collier v. State,* supra; *Hance v. State,* 245 Ga. 856 (268 SE2d 339) (1980).

(2) In his second enumeration of error, the appellant asserts that his confession was not freely and voluntarily given.

Immediately after his arrest, the appellant was taken to the sheriff's office where he signed a waiver of rights. However, he made no statement at that time. Some ten hours later, in the presence of his brother, and after conferring with his brother, he gave local authorities a complete confession. The trial court, after a Jackson v. Denno hearing, admitted the confession, holding it to have been made freely and voluntarily. Appellant argues that but for the urging of his brother with whom he consulted, he would not have confessed. The appellant's brother told him that if he did not confess, he would get the death penalty.

A confession otherwise admissible is not inadmissible because it was prompted by advice of a relative of the defendant. *Shavers v. State,* 244 Ga. 491 (260 SE2d 883) (1979).[1]

The appellant further argues that the initial waiver of rights signed the morning of his arrest was not a knowing waiver in that he

---

[1]Whether a prisoner is allowed to see relatives is significant in a determination of voluntariness. See Jurek v. Estelle, —— F2d —— (5th Cir., 1980).

was tired, hungry, withdrawing from alcohol and emotionally upset at that time.

The state introduced evidence that appellant was not drunk nor in such a condition as to be unable to understand the consequences of his action. Moreover, the statement was not taken immediately after the arrest but some ten hours later, after appellant consulted with his brother and was again advised of his rights. It is clear from the taped confession that the confession was voluntary. The ten-hour lapse between the time of the waiver and the actual confession at which time the previous warnings were reiterated did not render the confession inadmissible. *Stapleton v. State,* 235 Ga. 513 (220 SE2d 269) (1975).

Appellant also argues that his brother's advice to confess was the result of an investigator's conversation in which his brother was told to convince appellant to confess or he would face a death penalty. The investigator testified that he never had such a conversation with the appellant's brother and that appellant did not ask to consult with an attorney. This conflict in the evidence was resolved by the trial court in favor of admissibility, and we find no error in the trial court's determination. *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Burney v. State,* 244 Ga. 33 (257 SE2d 543) (1979); *McClesky v. State,* 245 Ga. 108 (263 SE2d 146) (1980).

We also note in this regard that on direct examination during the guilt-innocence phase of the trial, the defendant reiterated his confession and admitted his guilt. Therefore, *L. C. v. State of Ga.,* 151 Ga. App. 307 (259 SE2d 702) (1979), cited by appellant, is inapplicable. This enumeration of error is without merit. Appellant's confession being freely and voluntarily given, appellant's contention that tangible evidence obtained as a result of the confession was improperly admitted is similarly without merit.

(3) In his third and eleventh enumerations of error, the appellant argues general grounds. We find that the evidence in this case overwhelmingly supports a finding of the guilt of the accused by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307, supra. These enumerations are without merit.

(4) During the Jackson v. Denno hearing, outside the presence of the jury, the trial judge questioned the defendant as to the presence of telephones in the sheriff's office. Appellant contends that the trial court thereby assisted the prosecution and improperly interfered with the trial of the case. Similarly, appellant complains that at other times during the trial, the trial judge improperly admonished defense counsel. Enumerations of error 4 and 14 are without merit. *Cape v. State,* 246 Ga. 520 (1980); *Dyke v. State,* 232

Ga. 817 (209 SE2d 166) (1974); *Wilson v. State,* 229 Ga. 224 (190 SE2d 78) (1972).

(5) In his fifth enumeration of error, the appellant contends that the trial court erred in allowing the appellant's confession in evidence in that by doing so, the appellant became a witness against himself, and the appellant was not listed as a witness on the list of witnesses furnished to the appellant. The appellant cites no authority other than the statute itself. Code Ann. § 27-1403. The purpose of the statute is to " ' insure that an accused is confronted at trial with testimony against him from witnesses whom he has not had an opportunity to interview prior to trial.' " *Herring v. State,* 238 Ga. 288, 289 (232 SE2d 826) (1977). This enumeration of error is without merit.

(6) During voir dire, over objection, the daughter and son of the victim were allowed to remain in the courtroom and assist the prosecution. Appellant alleges error and argues that the court's own order granting a sequestered voir dire was thereby violated. However, the court's order by its terms allowed additional persons to remain during voir dire as the court deemed necessary. The control over such matters necessarily rests within the sound discretion of the trial court and unless that discretion is abused, it will not be controlled by the appellate courts. *White v. State,* 230 Ga. 327 (196 SE2d 849) (1973). In this case, contrary to appellant's position that the court's action prejudiced him, in at least one instance, the daughter of the victim was able to inform the court as to persons on the jury who were related to the victim within the prohibited degree. We note that this is a problem in jury selection in some rural counties. A review of the voir dire (see Division 1, supra) disclosed very frank answers regarding prejudice by the prospective jurors. No indication appears on the record nor does appellant demonstrate any prejudice due to the presence of the members of the family during voir dire. Enumeration of error 6 has no merit.

(7) Under the evidence in this case, appellant was the triggerman and actively participated in the armed robbery including receiving some of the proceeds. There is no merit in the contention that in this case the armed robbery was, as a matter of law or a matter of fact, a lesser included offense of the malice murder. See *Hoerner v. State,* 246 Ga. 374 (1980): *Bell v. State,* 239 Ga. 146 (236 SE2d 47) (1977); *Barrow v. State,* 235 Ga. 635 (221 SE2d 416) (1975).

(8) In his eighth enumeration of error, appellant contends that the trial court erred in failing to give defendant's request to charge number two.

Defendant's request to charge was as follows: ". . . generally intoxication or drunkenness is not a defense to a crime, however, if

prolonged drunkenness causes a permanent mania or insanity, then an insanity defense may be used."

No special or general plea of insanity was filed; the defendant instead entered a general plea of not guilty. See *Taylor v. State,* 245 Ga. 501 (265 SE2d 803) (1980); *Lewis v. State,* 239 Ga. 732 (238 SE2d 892) (1977); *Ross v. State,* 217 Ga. 569 (124 SE2d 280) (1962).

The request is not a complete statement of law, and the trial court did not err in failing to charge the request. *Peek v. State,* 155 Ga. 49 (116 SE 629) (1922); *Strickland v. State,* 137 Ga. 115 (72 SE 922) (1911); *Ross v. State,* supra.

The trial court adequately charged the jury as to voluntary intoxication. Testimony that the appellant began drinking at an early age and sometimes did not remember what happened does not raise an issue of insanity. See *Lewis v. State,* supra.

Appellant further argues that the court erred in failing to charge his requests to charge in the sentencing phase of the trial. We find no error. Mitigating circumstances are not required to be singled out. *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979). The trial court adequately charged as to *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1978) and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1978). Failure to instruct in the exact language requested is not error. *Pollard v. State,* 236 Ga. 587 (224 SE2d 420) (1976). Appellant's sixth request to charge, to wit: "Aggravating circumstances must be outrageously and wantonly vile in that they involve torture to the victim and depravity of mind on the part of the defendant" is an incorrect statement of law, and the court did not err in refusing to so charge. Code Ann. § 27-2534.1 et seq. *Hance v. State,* supra.

Appellant's requests to charge that if the jury could not reach a verdict, the trial court would impose a life sentence and that the law presumes a life sentence means that the defendant shall spend the remainder of his natural life in the penitentiary are clearly not principles of law to be given in a charge to a jury and were properly refused.

(9) The appellant in his ninth enumeration of error contends that the trial court erred in admitting state exhibits 2 through 4, 8, 10, 13, 14, 16 through 18, and 20 through 28 in that they are fruits of the poison tree, i.e. a product of an illegal confession. The confession having been determined to be properly admitted, appellant's argument is without merit. See Division 2, supra. Appellant further contends that some of the state exhibits were erroneously admitted over proper objection. Exhibits 2 and 3, photographs of the victim, were admitted over objection. The remainder of the exhibits were admitted without objection.

It is well settled that photographs, which are relevant and

material to issues in the case, need not be excluded on the grounds that they would inflame the minds of the jurors or are corroborative or cumulative of other grounds. *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1979); *Mooney v. State,* 243 Ga. 373 (254 SE2d 337) (1979). Each photograph depicted the location of the wound, the crime scene and the way in which the victim had been robbed. As such, photographs were material, and the trial court did not err in admitting them into evidence.

(10) In his tenth and seventeenth enumerations of error, the appellant asserts that the trial court erred in admitting the testimony of Dr. Whitcomb and other forensic evidence over objection. Appellant argues that since the cause of death had been stipulated, the testimony of Dr. Whitcomb, who had examined the body of the victim, was prejudicial and inflamed the minds of the jury. The evidence complained of was relevant testimony as to cause of death and the location of the wound, the location of the wound being a crucial part of the state's case. The trial court did not err in admitting the testimony. Relevant evidence cannot be kept from the jury by admission of the fact or waiver of the requirement of proof. *Franklin v. State,* 245 Ga. 141 (263 SE2d 666) (1980).

(11) In his eleventh enumeration of error, appellant contends that the trial court erred in not instructing the jury as to voluntary manslaughter or felony murder. The trial judge charged the jury as to the crime specified in the indictment, malice murder. Since there is no requirement that a charge on a lesser included offense be given in the absence of a written request, this enumeration is not meritorious. *Lamb v. State,* 245 Ga. 104 (263 SE2d 143) (1980); *Thomas v. State,* 243 Ga. 217 (253 SE2d 190) (1979); *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976).

(12) Appellant's enumerations of error 12 and 20 through 22 deal with sentence and will be considered in the sentence review portion of the opinion.

(13) In the appellant's thirteenth and fourteenth enumerations of error, he contends that the tape recordings of his confession were improperly admitted into evidence. When the state sought to introduce appellant's taped confession, defense counsel objected on the ground that the proper foundation had not been laid. The trial court instructed counsel to perfect his objection and state what the proper foundation should be. Counsel did not comply. Objection on the ground of a lack of proper foundation without stating what the proper foundation should be is insufficient and presents nothing for consideration on appeal. *Newman v. State,* 239 Ga. 329 (236 SE2d 673) (1977); *Dillard v. State,* 128 Ga. App. 747 (197 SE2d 924) (1973). However, pretermitting waiver, this court has examined the record

and concludes that the proper foundation for the use of the tapes was laid. *Brooks v. State,* 141 Ga. App. 725 (234 SE2d 541) (1977); *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); *Solomon, Inc. v. Edgar,* 92 Ga. App. 207 (88 SE2d 167) (1955). The record in this case affirmatively shows that the mechanical transcription device was capable of taking testimony, that the operator of the device was competent to operate it, and that no changes, additions, or deletions had been made to the tape. Furthermore, the manner of preservation was shown; the speakers were identified, and the testimony elicited was freely and voluntarily made without duress. See Division 2 herein. In addition, appellant argues that portions of the tape were improper and were not part of the appellant's statement but prejudicial assumptions of the interrogator.

During the interrogation, the officers asked appellant if he had struck the victim. Appellant denied striking the victim. Forensic evidence established bruises on the victim's face. The question was relevant to the inquiry. No prejudice having been shown, this argument is without merit.

(14) The state called the victim's son as a witness. He had been the second person to see the victim after the murder. In addition, the son worked in the victim's place of business and had knowledge of the amount of receipts. During direct examination, the witness became emotional and began to weep. A recess was taken, and the witness was able to compose himself. The defense counsel moved for a mistrial on the grounds that the state intentionally caused such an emotional outburst and that the defendant was prejudiced thereby. The motion for mistrial was overruled, and we find no error. The emotional outburst in this case consisted of the witness crying. There is no evidence in the record that the witness became hysterical or made any prejudicial comments or threats in the courtroom. The record simply does not support appellant's contention that this witness was placed on the witness stand by the state for the sole purpose of prejudicing the defendant. Furthermore, such emotions are reasonably expected by one who is a close relative of a murder victim. The trial court did not abuse its discretion in failing to grant appellant's motion for mistrial. "Many, if not most, trials by jury involve some degree of emotion by at least one party or the other. It would be unreasonable to expect that all emotions be completely frozen during a trial by jury when such effective bridle on emotions cannot be sustained elsewhere." *Associated Distributors, Inc. v. Strozier,* 144 Ga. App. 205, 206 (240 SE2d 761) (1977). Demonstrations and outbursts which occur during the course of a trial are matters within the trial court's discretion unless a new trial is necessary to insure a fair trial. *Sheppard v. State,* 235 Ga. 89 (218

SE2d 830) (1975). Here the trial court stopped the trial and allowed the witness to compose himself, and it is unlikely that the witness' crying without more prejudiced appellant's defense. Compare *Futch v. State,* 151 Ga. App. 519 (260 SE2d 520) (1979) with *Price v. State,* 149 Ga. App. 397 (254 SE2d 512) (1979).

(15) In his eighteenth enumeration of error, the appellant asserts that the trial court erred in failing to grant a mistrial as a result of improper actions, remarks and statements of the district attorney during the trial and in his closing argument. In one instance, the district attorney in cross examining the defendant's brother remarked to the witness, "I wouldn't think they would electrocute me, if I wasn't entitled to it." The defense counsel moved for a mistrial on the grounds that the district attorney was speaking with the witness and not questioning him. The motion was denied, but corrective instructions were given. The decision of whether to grant a motion for mistrial lies within the sound discretion of the trial judge, and his judgment will not be disturbed on appeal absent a showing of abuse of discretion. *Sims v. State,* 243 Ga. 83 (252 SE2d 501) (1979); *Patterson v. State,* 239 Ga. 409 (238 SE2d 2) (1977). Under the circumstance of this case, we find no abuse of discretion.

(16) On direct examination, appellant admitted a prior conviction for statutory rape. He went into the particulars of that offense in an obvious effort to show the jury he had not been convicted of a crime of violence. Appellant contends that the trial court erred in allowing the prosecution on cross examination to go into prejudicial aspects of the prior conviction of the defendant. We do not agree. The prosecutor's questioning sought to show that the defendant used the same defense in the statutory rape conviction as he now was attempting to assert. Each party has the right to a thorough and sifting cross examination of the opposing witness. Code Ann. § 38-1705. The trial court has the discretion to determine the scope of cross examination, and in the absence of abuse of that discretion, the action of the trial judge will not be disturbed. *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979). Enumeration of error 16 is without merit.

(17) In his last enumeration of error, appellant asserts that the trial court erred in admitting the indictment of a previous felony committed by the defendant at the presentence hearing since there was no showing that the defendant was represented by counsel or that he intelligently waived his right to counsel. However, the defendant on direct examination during the trial of the case brought out the conviction of the previous felony and admitted that he had committed that crime. Furthermore, the indictment for the prior felony was admitted without objection and shows upon its face that

the appellant was represented by counsel. This enumeration is wholly without merit.

## Sentence Review

As required by Georgia Law 1973, p. 159, et seq. (Code Ann. § 27-2537 (c) (1-3)), we have reviewed the death sentence in this case. We have considered the aggravating circumstances found by the jury, the evidence concerning the crime, and the defendant pursuant to the mandate of the statute. We conclude that the sentence of death imposed in this case was not imposed under the influence of passion, prejudice, or any arbitrary factor. See Division 1 herein.

The jury found the following aggravating circumstance: The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: armed robbery. Code Ann. § 27-2534.1 (b) (2).

During the guilt/innocence phase of the trial, the jury found the defendant guilty of armed robbery. We find the evidence factually substantiates and supports the finding of the statutory aggravating circumstance, the finding of guilt, and sentence of death by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, supra.

(18) The appellant contends in Enumeration 20 that the jury should not have been allowed to reach a verdict of a death sentence as no new evidence was introduced by the state during the sentence phase of the trial. However, the state necessarily under the facts of this case introduced during the guilt/innocence phase of the trial all of the evidence required to support the finding of the aggravating circumstance returned by the jury. This enumeration of error is without merit. See Spivey v. State, 241 Ga. 477 (246 SE2d 288) (1978).

(19) In his twenty-second enumeration of error, the appellant contends that the trial court's charge during the sentencing phase of the trial was unjustly weighted toward the state and the death penalty, in that undue weight and emphasis was placed on aggravating circumstances and too little on mitigating circumstances. Appellant argues that the trial court's charging of the three aggravating circumstances upon which the state sought the death penalty was prejudicial. We do not agree. The charge of the court complied with the standards set forth in Spivey v. State, supra; Fleming v. State, supra, and Hawes v. State, supra. See Jones v. State, 243 Ga. 820 (256 SE2d 907) (1979) and Fleming v. State, 243 Ga. 120 (252 SE2d 609) (1979).

Appellant's co-defendant, Christopher Hoerner, was sentenced to life imprisonment. See Hoerner v. State, supra. The question thus presented is whether appellant's sentence is disproportionate considering the crime and the defendant in light of the lesser

sentence imposed on a co-defendant.

There is no simplistic rule that a co-defendant may not be sentenced to death when another co-defendant receives a lesser sentence. *McClesky v. State,* 245 Ga. 108, supra; *Collins v. State,* 243 Ga. 291, supra. Each case is evaluated on its own unique factual circumstance.

As in *McClesky v. State,* supra, we find material distinctions between appellant's case and the case of the other co-defendant. First, the appellant was the actual perpetrator of the murder, whereas the other defendant was not in the immediate area of the killing but was stationed outside as a lookout. Juries under similar circumstances have sentenced triggermen to death while the same penalty has not been imposed on co-defendants. These cases have been affirmed by this court. *Goins v. State,* 245 Ga. 62 (262 SE2d 818) (1980); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977).

Contrary to appellant's position, this case is not controlled by the recent United States Supreme Court decision of Godfrey v. Georgia, 446 U. S.——(100 SC 1759, 64 LE2d 398) (1980). In Godfrey the court was concerned with a sentence of death resting exclusively on Code Ann. § 27-2534.1 (b) (7). The other statutory aggravating circumstances are more "specific and measurable." Godfrey v. Georgia, supra.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. The evidence shows that this was the intentional killing of an unarmed victim of an armed robbery. It was a cold-blooded killing perpetrated solely for the purpose of monetary gain. We find that the following similar cases listed in the Appendix support affirmance of the death penalty. Appellant's sentence to death for murder is not excessive or disproportionate to the sentence imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 14, 1980 — DECIDED NOVEMBER 5, 1980 —
REHEARING DENIED NOVEMBER 25, 1980.

*J. Max Davis,* for appellant.

*Jeff C. Wayne, District Attorney, Thomas M. Cole, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B.*

*Hill, Assistant Attorney General,* for appellee.

APPENDIX.

*Lingo v. State,* 226 Ga. 496 (175 SE2d 657) (1970); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840) (1970); *Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Tamplin v. State,* 235 Ga. 20 (218 SE2d 779) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Barrow v. State,* 235 Ga. 635 (221 SE2d 416) (1975); *Brown v. State,* 235 Ga. 644 (220 SE2d 922) (1975); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Arnold v. State,* 236 Ga. 534 (224 SE2d 386) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979); *Hamilton v. State,* 244 Ga. 145 (259 SE2d 81) (1979); *Cobb v. State,* 244 Ga. 344 (260 SE2d 60) (1979); *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980).