**Dennis DICK, Petitioner–Appellant,**

v.

**Ralph KEMP, Warden,
Respondent–Appellee.**

No. 87–8000.

United States Court of Appeals,
Eleventh Circuit.

Nov. 24, 1987.

Rehearing En Banc Denied
Dec. 29, 1987.

Thomas J. McHugh, Jr., Fayetteville, Ga., Robert L. McGlasson, Atlanta, Ga., for petitioner-appellant.

William B. Hill, Jr., Asst. Atty. Gen. of Ga., Atlanta, Ga., for respondent-appellee.

Before VANCE, JOHNSON and EDMONDSON, Circuit Judges.

JOHNSON, Circuit Judge:

## I. BACKGROUND

Dennis Dick is appealing a denial of federal habeas corpus relief. He received a death sentence in 1979 following a conviction for murder and armed robbery. Unsuccessful in his subsequent appeals, *Dick v. State*, 246 Ga. 697, 273 S.E.2d 124, *cert. denied*, 451 U.S. 976, 101 S.Ct. 2059, 68 L.Ed.2d 357 (1981), Dick filed a petition for writ of state habeas corpus in 1981. This petition was replaced by an Extraordinary Motion for New Trial, which was denied without a hearing, and the denial was affirmed on appeal. *Dick v. State*, 248 Ga. 898, 287 S.E.2d 11 (1982). The state petition for habeas corpus was refiled in 1982. The lower court granted a stay of execution for the purpose of holding a limited evidentiary hearing. The Supreme Court of Georgia affirmed the grant of the stay, *Zant v. Dick*, 249 Ga. 799, 294 S.E.2d 508 (1982), and in later proceedings, the Court also directed the lower court to receive testimony from one of Dick's co-defendants, Chris Hoerner. Dick's writ of habeas corpus was ultimately denied. In April 1984, Dick filed a petition for federal habeas corpus, but in July the district court dismissed the petition without prejudice for Dick to exhaust his claims in state court. By October 1985, Dick had exhausted his state remedies on all claims, and in January 1986, Dick filed again for federal habeas relief, which was denied by the district court in December 1986. This appeal follows.

Dick shot O.C. Rider, a known bootlegger in Dawson County, Georgia, during a robbery undertaken with Chris Hoerner, who received a life sentence, and Billy Webster, who was acquitted by the jury. According to a taped statement made by Dick within twenty-four hours of his arrest, the three men had discussed robbing Rider with no intention of killing him. Hoerner gave Dick a pistol as they entered Rider's trailer. Inside, Dick asked for Rider's money and pointed the pistol at him. Rider resisted handing over his money and instead, as Dick explained, Rider "started towards me and I got scared and I pulled the trigger. I didn't mean to shoot him." Webster grabbed the metal money box before the three left. An investigation of the scene of the crime revealed that Rider's pockets had been emptied. There was a bullet hole in the floor beside Rider, apparently a shot made in addition to the gunshot entry wound behind Rider's left ear that caused his death.

Just as Dick, Hoerner, and Webster stepped out of the trailer, a car with three customers arrived. Dick told the occu-

pants of the car to get out and onto the ground. The customers watched as the three robbers tried to drive off and then stalled after a short distance when their car landed in a ditch. Dick unsuccessfully tried to start the car of the three customers, and then ordered them to run into the woods. He added, "if you look back you are dead." Meanwhile, Hoerner managed to get their own car out of the ditch—and Dick, Hoerner, and Webster finally drove off.

Evidence at the trial indicated that Dick was a chronic alcoholic and was severely intoxicated the night of the killing. Dick's only defense at trial was that because of his intoxicated state, he did not have the requisite mental intent for murder under Georgia law. After his trial, Dick additionally learned that he had been involuntarily drugged when, prior to going to Rider's trailer, Hoerner had secretly put unidentified pills in Dick's beer.

A number of issues have been raised on appeal. While this Court has considered all the issues carefully, the issue on which we base our reversal of the district court can be corrected only by affording Dick a new trial. We therefore do not reach any of the other issues raised in this petition for habeas relief.

## II. THE *SANDSTROM* VIOLATION

Recent developments in the law of the land and of this Circuit provide clear avenues to follow in this case. Beginning with *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), we know that jury instructions which shift the bur-

den of persuasion from the government to the defendant on the issue of intent are unconstitutional.[1] Subsequently, *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), clarified that an accompanying instruction that any presumption of intent to act could be rebutted did not render the unconstitutional instruction constitutional.[2] Then in *Rose v. Clark*, —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Supreme Court accepted the notion of harmless error with *Sandstrom* violations in accordance with the beyond a reasonable doubt standard from *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Chapman* held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828.

This Circuit has had numerous occasions to apply these precepts, most recently in the opinion jointly deciding *Bowen v. Kemp* and *Dix v. Kemp*, 832 F.2d 546 (11th Cir. 1987) (en banc). With particular reliance on *Bowen/Dix* and also on *Thomas v. Kemp*, 800 F.2d 1024 (11th Cir.1986), we conclude that in this case there was a *Sandstrom* error and that it was not harmless.

■ In this case, the jury instructions given by the trial judge included the following instruction:

*The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but that presumption may be rebutted. A person of sound mind and discretion is pre-*

**1.** The constitutionally infirm instructions in *Sandstrom* were: "The law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 513, 99 S.Ct. at 2453.

**2.** The constitutionally infirm language in *Francis* was:

A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or omission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence.

The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted. 471 U.S. at 311, 105 S.Ct. at 1969–70.

*sumed to intend the natural and probable consequences of his acts, but likewise, this presumption may be rebutted . . . .* one voluntarily under the influence of alcohol is presumed to intend the legitimate consequences of his act, and the question is whether he intended the consequences of the act. (Emphasis added.)

This instruction went to proof of the element of intent required for a murder conviction in Georgia. The italicized portion follows verbatim the impermissible instruction used in *Francis.* Thus, on its face, the instruction in Dick's trial unacceptably shifted the burden of proof from the state to Dick. "[A] reasonable juror could have understood the challenged portions of the jury instruction in this case as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the crucial element of intent. . . ." *Francis,* 471 U.S. at 325, 105 S.Ct. at 1977.

Having found language that unconstitutionally shifted the burden of proof in this case, we are now required by *Rose v. Clark* to undergo a harmless error review. If, on the facts of the case, the jury instruction was harmless, then the *Sandstrom* error would not require a new trial. This Circuit recognizes harmless error in two situations: "(1) where the erroneous instruction was applied to an element of the crime that was not at issue in the trial, or (2) where the evidence as to defendant's guilt was overwhelming." *Bowen/Dix; see also Davis v. Kemp,* 752 F.2d 1515, 1521 (11th Cir.) (en banc), *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). We must consider both aspects in this case: whether Dick's defense of lack of intent due to involuntary intoxication put the issue of intent squarely before the jury and, if so, whether evidence at trial overwhelmingly showed intent to kill on the part of Dick.

■ To guide us for the first prong, this Circuit faced a substantially similar case in *Thomas v. Kemp,* 766 F.2d 452, 454 (11th Cir.1985), *vacated and remanded for further consideration,* —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732, *on remand,* 800 F.2d 1024 (11th Cir.1986) (affirming result

of vacated opinion), *cert. denied,* —— U.S. ——, 107 S.Ct. 1982, 95 L.Ed.2d 822 (1987). In *Thomas,* the defendant had proffered drug intoxication as his sole defense. The jury was instructed that if drunkenness or intoxication so impaired Thomas,

> as to render him incapable of forming an intent to do the act charged or to understand that certain consequences were likely to result from it, he would not be criminally responsible for the act. Whether that was true or not, it is a question for you and the jury to determine.

766 F.2d at 456. This Court held that this instruction, coupled "with some evidence to support the defendant's argument," put intent "squarely" before the jury. *Id.; see also* 800 F.2d at 1026. In this case, the judge gave identical instructions to Dick's jury. In addition, Dick presented evidence and testimony supporting his alcoholism and his intoxication on the night of the incident. A fortiori, the jury instruction in this case that violated *Sandstrom* could not have been harmless on the ground that the element of intent was not at issue. *Thomas* clearly dictates that it was at issue. *Cf. Tucker v. Kemp,* 762 F.2d 1496, 1501 (11th Cir.1985) (en banc) (harmless error where defendant's "sole defense was non-participation in killing"), *cert. denied,* —— U.S. ——, 106 S.Ct. 3340, 92 L.Ed.2d 743 (1986); *McCleskey v. Kemp,* 753 F.2d 877, 903–04 (11th Cir.1985) (en banc) (harmless error where alibi defense was asserted), *aff'd on other grounds,* —— U.S. ——, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Davis v. Kemp,* 752 F.2d at 1521 (harmless error where defense was non-participation).

■ The state argues that intent cannot be at issue in this case. This argument stems from one of Dick's post-arrest statements about the killing: "[Rider] started towards me and I got scared and I pulled the trigger." The state contends that through this statement Dick conceded the voluntariness of his acts, therefore removing the issue from the jury. Thus, because the jury instruction was "mere surplus-

age," it must have been harmless error.[3] But this argument is problematic. Dick's retrospective interpretation of the event still leaves room for him to have lacked the intent to kill at the time of the incident, room which must be reserved for jury interpretation. Dick's response to Rider's movement may have been voluntary in the narrow sense that he physically pulled the trigger, but not voluntary in the sense that the act was synonymous with an intent to kill. By collapsing intent and act, the state takes the very step which makes constitutionally infirm the jury instruction that a person is presumed to intend the consequences of acts.

Rather than showing that the unconstitutional instructions were harmless because there was no issue of intent left to decide, the state succeeds in showing precisely the opposite. The state's interpretation of Dick's statement reveals a presumption about the consequences of acts that is sufficiently strong to make Dick's reaction to Rider tantamount to an intent to kill. Rather than mere surplusage, the jury instructions were more likely an exacerbation running counter to the intent of *Francis*. The point in *Francis* was to preserve a jury assessment of the defendant's state of mind, not to supplant the assessment with inferences about acts. The jury must presume innocence until the prosecution proves intent.

Comparison of this case with the facts of *Dix* and *Bowen* supports the conclusion that intent remained at issue in this case. Both *Dix* and *Bowen* involved defendants who raised an insanity defense, and juries that rejected the insanity defense. The court reasoned that

> [t]he jury's rejection of his plea does not mean it found that the defendant was totally free of mental infirmity or that his capacity to formulate a specific intent was the same as that of a normal or average person. The prosecution must still prove beyond a reasonable doubt that the defendant formed the intent necessary to convict him of murder.... The defendant's burden of proving insanity as a defense, does not impose the burden of proving lack of the required intent.

In conclusion, the en banc court held that "when a criminal defendant raises an insanity defense, a *Sandstrom* error ordinarily cannot be harmless on the grounds that intent is not at issue."[4]

This case is like *Dix* and *Bowen* in that the jury concluded that Dick was guilty of murder and in effect did not accept Dick's intoxication defense. However, the question remained whether "the defendant was totally free of mental infirmity or [whether] his capacity to formulate a specific intent was the same as that of a normal or average person." *Bowen/Dix*. Likewise, in this case, the unconstitutional instructions spoke to a live issue before the jury.

 To this the prosecution responds that, even if intent was squarely at issue, the rebuttable presumptions of intent do not require a new trial because they were immediately followed by a correcting instruction that "a person is not presumed to act with criminal intention, but the jury trying the case may find such intention upon consideration of the words, conduct,

---

3. The state adds that Georgia has only two recognized affirmative defenses to murder: insanity, O.C.G.A. § 16-3-2, and delusional compulsion, O.C.G.A. § 16-3-3. These are argued to be the only possible attacks on the "sound mind" that intends certain consequences according to the presumption of the jury instruction. Because no defense succeeded in Dick's case, the state argues that Dick's sound mind is not in question and that the intent issue is not affected by the jury instruction in question. However, posing a requirement to rely on an affirmative defense already impermissibly shifts the state's burden of proving intent to the defendant's burden of proving non-intent. Once Dick raised the issue of intent, the state needed to prove that Dick had a sound mind which was capable of intending and did intend to kill, rather than Dick needing to prove that he did not intend the consequences of his act.

4. The only exception to the ordinary situation recognized in the opinion was the rare case where a defendant removes the issue from the jury by actually admitting an intent to commit the act charged. *Bowen/Dix* (citing *Cook v. Foltz*, 814 F.2d 1109 (6th Cir.1987). Dick has not admitted an intent to kill, and the exception does not fit this case.

demeanor, and all other circumstances connected with the act for which the accused is prosecuted." The state's position in this case, however, is the dissenting position in *Francis*, 471 U.S. at 327, 105 S.Ct. at 1977. In that the position was before the court and garnered only minority support, it is an argument the Supreme Court clearly rejected.

In *Francis*, the Supreme Court emphasized that its assessment of the unconstitutional instruction was considered in full context, but that "the charge read as a whole does not explain or cure the error." 471 U.S. at 325, 105 S.Ct. at 1977. Considering what a reasonable juror would have understood, the majority of the Supreme Court was not satisfied that the supposedly correcting sentence "explained the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion." *Id.* at 319, 105 S.Ct. at 1973. Reviewing the instructions as a whole in this case, the likeness with the instructions in *Francis* is almost exact. Thus, as the Supreme Court observed, it is clear that the correcting language would not necessarily have kept a juror from impermissibly shifting the burden of proof from the state to Dick.

■ Having found only harmful error under the first prong, we must now assess the second prong of whether the violation in this case was harmless error beyond a reasonable doubt. This review covers the possibility that the evidence of intent before the jury was sufficiently overwhelming to, beyond a reasonable doubt, make inclusion of the unconstitutional jury instructions irrelevant to the outcome of the jury verdict. In our most recent pronouncement on harmless error under *Sandstrom*, the Court in *Bowen/Dix* held that when intent is at issue, "we cannot infer overwhelming evidence of intent directly from the physical sequence that resulted in the victim's death. We must also look at the evidence of defendant's state of mind." Finding ambiguity as to the defendant's conduct and conflicting expert testimony as

to Bowen's state of mind, the Court concluded that "[u]nder these circumstances, the *Sandstrom* error cannot be harmless on the overwhelming evidence ground."

This language is significant when applying the harmless error analysis. Because the evidence presented in this case placed intent before the jury, we must consider Dick's state of mind. In doing so, we must be careful to distinguish between findings of guilt and findings of intent. *Brooks v. Kemp*, 809 F.2d 700 (11th Cir.1987) (en banc, reinstating earlier opinion), *cert. denied*, —— U.S. ——, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987). The majority in *Brooks* did not find overwhelming evidence of intent despite acts of kidnapping, robbing, and raping. Using the same reasoning as the court in *Brooks*, it was possible for Dick to have shot Rider without an intent to kill, and for our review, it does not suffice that a jury could have reasonably inferred otherwise. *Brooks*, 762 F.2d 1383, 1393 (11th Cir.1985).

*Thomas* was also a case in which the *Sandstrom* error was not harmless beyond a reasonable doubt. Even though the Court found that "[f]or the purpose of this consideration, it is acknowledged that the defendant killed the victim by outrageous acts that clearly evidence the intent necessary to support a felony murder conviction," 800 F.2d at 1025, such inferences could not override the jury's proper determination of the issue placed before it by the defense: "was [the defendant] of sound mind when he committed these acts?" *Id.* at 1026. Instead, the Court could not be sure that the infirm jury instructions had not affected the jury's determination, and the error was deemed harmful.

We are, as was the Court in *Thomas*, faced with an intoxication defense, and the jury in this case was likewise faced with the determination of a sound mind and the scope of its intent. There is ample evidence that Dick had been a chronic drinker for many years. There is strong evidence that Dick was severely intoxicated the night of the murder. Dick's trial counsel testified in the first state habeas corpus proceedings that during his initial inter-

views with Dick, he detected withdrawal symptoms from drugs, which were so pronounced that it was difficult to elicit adequate information to assist in the preparation of Dick's defense. Dick apparently experienced blank periods in recalling the evening, and he never recalled firing a second shot. Dick testified that he felt as if he had been on drugs at the time of the crime, and subsequent revelations indicated that he had in fact been secretly drugged by his accomplice, Hoerner.

As in *Bowen/Dix,* the record points to sufficient ambiguity about Dick's conduct to have left an open question as to Dick's state of mind. Because the evidence does not overwhelmingly point in the direction of intent to murder, the *Sandstrom* error could not have been harmless beyond a reasonable doubt. *Cf. Potts v. Kemp,* 814 F.2d 1512, 1516 (11th Cir.1987) (overwhelming evidence of intent where defendant drove victim to dirt road and shot him after taunting); *Burger v. Kemp,* 785 F.2d 890 (11th Cir.1986) (harmless error where intent was not raised as affirmative defense and victim was placed in trunk of car and driven into pond), *aff'd,* —— U.S. ——, 107 S.Ct. 3114, 3119–20 n. 5, 97 L.Ed.2d 638 (1987); *Drake v. Kemp,* 762 F.2d 1449 (11th Cir.1985) (harmless error because, although forceful and repeated blows were overwhelming evidence of intent to kill, only defense was non-participation and there was not overwhelming evidence of intent to aid and abet), *cert. denied,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

## III. CONCLUSION

This case must be tried again. In this new and fairer trial, defendant Dick must be accorded a full presumption of innocence and the state must bear the full weight of proving every element necessary to establish guilt. Because we are remanding for a new trial, we do not explicate our views on any of the other issues presented on appeal. We note, however, that a number of other aspects of the trial proceedings below are troubling. We anticipate that any infirmities will be corrected on retrial.

The denial of habeas corpus relief on the *Sandstrom* issue is hereby REVERSED. This case is REMANDED to the district court with instructions to grant the writ of habeas corpus, conditioned on the state's affording Dick a new trial.

EDMONDSON, Circuit Judge, concurs in the judgment.